JAMES M. WECKERLY, APPELLANT, V. CADET TAYLOR ET AL., APPELLEES.

FILED JUNE 8, 1905.   No. 13,835.

1. **Creditors' Suit.** A judgment creditor, with the aid of equity, may reach any property or interest of his debtor not exempt from execution, which, with such aid, the said debtor might himself reach.

2. **Fraud: PLEADING.** An assignment of a chose in action, even without consideration, is not presumptively fraudulent as to a creditor who becomes such nearly four years afterwards, and such a presumption is not supplied by vague and general allegations, but circumstances must be pleaded from which fraud may be reasonably inferred.

3. **Actions: LIMITATION.** Actions for relief on the ground of fraud must be brought within four years from the discovery of the fraud or such facts and circumstances as are indicative thereof, and, if followed up, would lead to its discovery.

APPEAL from the district court for Douglas county: CHARLES T. DICKINSON, JUDGE. *Affirmed in part.*

*Arthur C. Wakeley,* for appellant.

*A. S. Churchill,* contra.

AMES, C.

This is an appeal from a judgment sustaining separate general demurrers to a petition and dismissing an action as to certain defendants. The alleged causes of action arise out of distinct facts and circumstances, so that we think a demurrer for misjoinder, which was filed by some of the defendants, would have been properly

sustained, and we are consequently compelled to divide the case into two branches and treat of each separately.

It is alleged that in 1890, Cadet Taylor, H. O. Devries, the Globe Loan & Trust Company, a corporation, and the Globe Savings Bank, a corporation, purchased a tract of real estate situate in Omaha, in this state, paying therefor the sum of $18,000, and procuring the title to be conveyed to one McIntyre, the latter paying no consideration therefor; that immediately afterwards McIntyre, also without consideration and at the request of the purchasers, conveyed the property to the Globe Building Company, another corporation, of which the purchasers were and have remained the principal stockholders.  The idea that this transaction was fraudulent as to creditors, existing or subsequent, is not alleged in the petition, and is emphatically repudiated by the plaintiff in his brief, but it is alleged that such conveyance was, and was intended to be, of the bare legal title only, the purchasers or their representatives remaining continuously in possession in person or by their tenants, and managing or controlling the property and receiving its rents, issues and profits from that time until the present.  Whence, it is contended, a trust resulted to the purchasers, and they are, and at all times have been, the sole equitable and beneficial owners of the property in the proportions in which they contributed to the payment of the purchase money.  In 1896, more than five years after the conclusion of this transaction, the purchasers became obligated to the plaintiff upon a bond, in which the savings bank was principal and the others sureties, and upon which a liability accrued sometime later, and upon which suit was brought, and afterwards judgment obtained in March, 1901.  Execution having been issued upon the judgment and returned unsatisfied, it was alleged that all the defendants were insolvent except for the property in question and other property somewhat similarly situated, and prayed that title to the tract described be adjudged to be in the purchasers, and be subjected to judicial sale for the satisfaction of the judgment.

This version of the transaction excludes the idea that the property was conveyed to the corporation as a gift or in exchange for its stocks or obligations, and it also excludes the idea of possession or ownership or claim thereof by the corporation, so as to put the statute of limitations in motion or create a title by prescription, and, as we are constrained to think, the petition states in this regard a cause of action. The plaintiff, with the aid of equity, may reach any property right or interest not exempt from execution that the judgment debtors might, with like aid, reach themselves; and it is undeniable that, if the story told by the pleading is true, the latter are entitled to have the property conveyed to themselves upon demand at any time, and that equity would, if necessary, enforce the demand. *Millard v. Parsell,* 57 Neb. 178; *Harris v. King,* 16 Ark. 122; *Havens v. Bliss,* 26 N. J. Eq. 363; *Straton v. Dialogue,* 16 N. J. Eq. 70; *Bear v. Koenigstein,* 16 Neb. 67; *Hews v. Kenney,* 43 Neb. 815; 1 Perry, Trusts (5th ed.), sec. 126; *Robinson v. Springfield Co.,* 21 Fla. 203; *White v. Sheldon,* 4 Nev. 280.

But this theory of the transaction excludes, as we have already said, the idea of fraud, or that the estate was conveyed to the building company in fraud of creditors; and the rights and remedies of the plaintiff as to it must therefore be measured by those of his judgment debtors, which they cannot exceed. If the transaction by which the title was conveyed to the building company was fraudulent, it would fall within the principles and authorities of the second branch of this discussion, and the judgment of the district court would have to be affirmed. The Sherman & McConnell Drug Company, another defendant whose demurrer was sustained and as to which the action was dismissed, is a lessee of the building company, whose fate it may share, and was, of course, properly joined with it as a defendant, as well for its own protection as to enable the plaintiff to obtain complete relief. As to both these defendants, we think the demurrer was erroneously sustained.

The other branch of the inquiry pertains to the demurrer of the Putnam Company, which was also sustained, with a judgment of dismissal. With respect to this matter it is alleged that the defendant, the Globe Loan & Trust Company, a corporation, acquired from one Ijams and wife on the 7th day of June, 1892, a mortgage on a tract of real estate, and assigned it, without consideration, on the 15th day of June, 1892, to the Linwood Park Land Company, another corporation. Thereafter the last named company procured title by foreclosure proceedings of the property described in the mortgage, and in the year 1900 conveyed a part thereof to the Putnam Company and a part to Henryton Land Company, another corporation. Concerning these transactions and the several corporations named as having had to do with them, the petition alleges: "That the said Linwood Park Land Company, said Putnam Company, said Henryton Land Company, and the said Globe Building Company were created and organized, and have always been managed, controlled and operated by the said Cadet Taylor, the said W. B. Taylor (not a party to this action) and the said H. O. Devries down to the death of said Devries on February 25, 1900, and since the death of said Devries have been controlled, managed and carried on by the said Cadet Taylor and said W. B. Taylor. That said several corporations were devised, created and organized, in so far as the said Cadet Taylor and H. O. Devries were interested and concerned, purely and solely for the purpose of defrauding the creditors of the several companies, and existing and future creditors of the said Cadet Taylor and said H. O. Devries, and especially the plaintiff above named, and for the principal purpose of taking possession of the assets and more effectually hindering, delaying and defrauding the creditors of said Globe Savings Bank and said Globe Loan & Trust Company, and to afford the means and machinery of transferring the property and assets of the said several corporations and individuals from one to another indiscriminately and interchangeably; and that the said several

corporations were created and existed, and especially the said Henryton Land Company and the Putnam Company and the said Globe Building Company now exist and are carried on, for the express purpose of hindering, delaying and defrauding the creditors and persons holding claims and judgments against the said Cadet Taylor, H. O. Devries and the Globe Savings Bank." Now, it will be observed that, according to the allegations of the petition, this last transaction was radically different in character and purpose from that which we previously discussed. According to it the mortgage from Ijams and wife to the Globe Loan & Trust Company had its inception more than four years before the execution of the instrument upon which the plaintiff obtained his judgment, in furtherance of a fraudulent and elaborate scheme and device to hinder, delay and defraud the creditors existing and subsequent of Taylor, Devries and the two corporations, the savings bank and the trust company, and particularly the plaintiff; but it is not alleged that at that time the parties or corporations, or any of them, were or was insolvent, or had any debts or creditors, or contemplated having any or having any dealings with the plaintiff. Neither is it alleged that the money with which the trust company purchased the mortgage from Ijams and wife was not the money of that corporation, which it had a lawful right to invest in that manner. The plaintiff did not become a creditor of the savings bank until March 30, 1896, nearly four years after the assignment of the mortgage to the Linwood Company, and the bank did not become insolvent until the month of June following, when the bond, which is the foundation of the plaintiff's judgment, was, on the 9th day of that month, executed by the trust company, Devries, and Cadet Taylor and one Mount, as sureties, pursuant to the statute relative to insolvent banks. It was not until three years after the instrument became effectual by official approval on June 26 that a cause of action accrued on the bond, nor until nearly two years still subsequently that a judgment was rendered

thereon.   Now, with respect to this Ijams mortgage, it is to be observed that it is not a case like the former of the purchase of and payment for land by one person and its conveyance to another, but of an assignment of a chose in action, which appears, if it is not distinctly alleged, to have been absolute between the parties.   The averments of the petition concerning these several corporations are so extremely vague and general as to express no definite idea at all.   They are said to have been organized, so far as the defendants Taylor and Devries were interested and concerned, for the purpose of defrauding their creditors, and to afford the means and machinery of transferring their property and assets interchangeably, and concealing it from their creditors, but who else were concerned, and what was the capital stock of the corporations, and by whom owned, and what were the motives and knowledge of other stockholders, if any there were, or what property or assets any of the corporations at any time had, other than the mortgage in question, or whether Taylor and Devries, or either of them, were stockholders or ever had any creditors, existing or subsequent, except the plaintiff, the pleading does not say.   For aught that appears to the contrary, all the defendants, including the savings bank, were at the time the mortgage transaction took place in June, 1892, solvent and prosperous.   The bank was presumably indebted to the depositors in like manner as such institutions usually and necessarily are indebted, but it is incredible that the defendants or any of them at that time contemplated that the plaintiff would become a depositor of the bank nearly four years later, and that the bank a few months still later would become insolvent, and become obligated, with the other defendants as securities for it, upon an instrument which, at the time of the transaction sought to be impeached, was unknown to the law, but which was authorized by a statute subsequently enacted.   An assignment of a chose in action, even without consideration, is not presumed to be fraudulent as against creditors who become such not until four years

later, and such a presumption is not supplied by vague and general allegations, but circumstances must be pleaded from which fraud in fact can reasonably be inferred. If a petition fails in this respect and to this extent, it is obnoxious to a demurrer. The several corporations, whether organized with fraudulent design or not, were distinct legal entities, whose existence was disclosed by the public records of the county, which also disclosed that the trust company was the mortgagee of the Ijams mortgage and had assigned it to the Linwood Park Land Company nearly four years before the plaintiff became a creditor of the bank, and more than four years before the bond in question became obligatory. These facts were notice to him, and to all the world, that these institutions were distinct legal entities, separate from each other and from the savings banks, presumably each owning assets and having rights and incurring obligations separate from every other. There was, to say the least, nothing in the circumstances or situation tending to mislead him to his prejudice. He extended his credit in the first instance to the savings bank alone. Afterwards the state accepted the obligation, as sureties, of Taylor, Devries, Mount and the trust company. None of these parties except the last is alleged to have ever had any interest in the instrument in controversy which it retained only seven days. Neither the Linwood Park Land Company, the assignee of the mortgage, nor the Putnam Company, which acquired part of the mortgaged estate after foreclosure, is charged with ever having had in its possession or under its control any specific property of the savings bank or of Taylor or of Devries, or to be or to have been in any way legally bound for the debts or obligations of any of them. The statute provides (sec. 20, ch. 32, Comp. St. 1903; Ann. St. 5969), that "no conveyance or charge shall be adjudged fraudulent, as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration." *Boldt v. First Nat. Bank,* 59 Neb. 283; *Graham v. Estate of Townsend,* 62 Neb. 364; *Robinson Notion Co.*

*v. Foot,* 42 Neb. 156, and cases cited. Nearly eleven years intervened between the assignment of the mortgage and the recovery of the plaintiff's judgment, and nearly five years between the latter event and the happening of the insolvency of the bank, and eleven years and six months before the beginning of this suit. During all this time the petition of the plaintiff discloses that he knew or had the means of knowing all the facts and circumstances detailed in his petition. If they are indicative of a fraudulent transfer of the property of his debtors for the purpose of putting it beyond his reach, they afforded him a cause of action at least as soon as the liability of the savings bank to him became fixed, which was not later than the date of its insolvency and suspension of payment. *Gillespie v. Cooper,* 36 Neb. 775; *Hellman v. Davis,* 24 Neb. 793; *Westervelt v. Filter,* 2 Neb. (Unof.) 731.

We think therefore that the demurrer of the defendant, the Putnam Company, was properly sustained, and it is recommended that the judgment of the district court dismissing the action as to that defendant be affirmed; but that the judgment as to the Globe Building Company and the Sherman & McConnell Drug Company be reversed and the cause remanded for further proceedings.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court dismissing the action as to the Putnam Company be affirmed, but that the judgment as to the Globe Building Company and the Sherman & McConnell Drug Company be reversed and the cause remanded for further proceedings.

JUDGMENT ACCORDINGLY.