A. E. SHORTHILL COMPANY, Appellee, v. WILLIAM BART-
LETT, Appellant, and WILLIAM HITAFFER, and CARL
PROUTY, Appellees.

Mechanic's lien: SUB-CONTRACTORS: LIABILITY OF OWNER. The owner of a building in process of construction who has agreed with the contractor to pay for the materials and labor to the parties entitled thereto on presentation of itemized statements therefor, and who by his conduct places himself under obligation to materialmen, becomes personally liable to them for material used in the building and they may have and enforce a lien against the building for the reasonable value of the material furnished.

Evidence reviewed and held to show a personal liability of the owner.

*Appeal from Emmett District Court.*— A. D. BAILIE,
Judge.

WEDNESDAY, JULY 11, 1906.

ACTION in equity to foreclose mechanic's lien.   Decree
for plaintiff and defendant William Bartlett appeals.— *Af-firmed.*

*W. A. Ladd* and *Myerly & Davidson,* for appellant.

*D. R. Alexander* and *J. L. Bonar,* for appellee A. E.
Shorthill Co.

WEAVER, J.— Plaintiff, a corporation, claims that pur-
suant to a contract with defendant Bartlett and his codefend-
ants, William Hitaffer and Carl Prouty, it manufactured
and sold to defendant certain iron columns and plates spe-
cially designed and fitted to be used in the construction of a
block or building in the city of Estherville, Iowa.   It is fur-
ther alleged that said material constituted only a part of a
larger order given by said defendants for iron work to be
used in said building, and that while the work of manu-
facturing and preparing the several items of material so
ordered was in progress, and after the columns and plates
above mentioned had been completed, ready for delivery, the
defendant Bartlett ordered the work stopped and refused to
receive or pay for such material.   Judgment is asked against
defendants for the reasonable value of said items and that a
lien therefor be established upon the property.   The defend-
ant Bartlett, separately answering, denies having ordered
the materials from plaintiff, denies having entered into any
contract or agreement to pay therefor, and denies that any
other person had authority to make such order, agreement,
or purchase in his behalf.   He further pleads that he let the
contract to his codefendants to furnish the materials and do
the work of constructing said building, and avers that by the

negligence of his codefendants said building, when partially completed, collapsed, and in view of the situation thus produced he entered into an additional contract with said contractors, Hitaffer and Prouty, agreeing therein to advance the necessary money to pay for the materials and labor required to restore said building. He further says that about this time the appellee wrote a letter to Hitaffer and Prouty, stating that it was about ready to cast certain iron columns such as were required in said building and would furnish them at $52 each. This letter, he says, was immediately shown him by Hitaffer and Prouty, and he agreed that they should order the said columns on the terms thus proposed, and he avers that the columns which plaintiff claims to have manufactured for his building were much larger and heavier than was contemplated when the order was made, and upon learning that fact, and learning that plaintiff intended to demand a proportionately higher price for said work, he promptly notified plaintiff not to ship it.

Appellant further pleads that, Hitaffer and Prouty having failed to complete the building as provided by their agreement, he has been compelled at great loss to employ other help and complete it himself, and that after paying the expense thus incurred there is nothing whatever in his hands due to said contractors, but, on the contrary, there is a large balance due and owing from them to him. In reply plaintiff pleads that by reason of matters hereinafter more fully stated the appellant is estopped to deny his liability for the payment of the claim in suit.

The testimony, most of which is undisputed, tends to show that Bartlett let to Hitaffer and Prouty the contract for furnishing the material and erecting the building in question in accordance with plans prepared by James S. Cox, architect. The building was to be erected under the supervision of the architect, and the appellant reserved the privilege of taking possession of the work and completing it at any time upon notice or certificate by the architect of any

neglect or failure of the contractors to conform to the terms of their agreement. When in a state of partial completion, and while the work of the contractors was still in progress, a portion of the building collapsed. Some controversy ensued as to which party should bear the burden of this loss, but finally appellant and Hitaffer and Prouty entered into a written agreement for the restoration and completion of the building, leaving the disputed question as to which party should finally bear the loss to future settlement.

The contract is too long to be here set out *in extenso*. The stipulations material to this controversy provide that Hitaffer and Prouty shall proceed at once to remove the fallen portion of the building and rebuild and construct the same with such changes in kinds of material and manner of building as Bartlett shall desire and for which he shall furnish proper plans and specifications, all of said work to be done under the supervision of Bartlett or his agent. The contractors on their part agreed to keep and furnish to Bartlett an accurate account of the expense incurred in restoring the building to its former condition, as well as for each item of new material and of all substituted materials differing from those provided in the original plan. It was further agreed that, as Hitaffer and Prouty claimed to be financially unable to go on with the work, Bartlett would advance the money required. The language of this clause of the agreement is as follows:

It is therefore agreed that the said Wm. Bartlett, shall advance the necessary money to pay for the said extra materials and the labor performed in restoring the said destroyed portion of said building, excepting the labor of said contractors, and the money as designated herein, as money deposited in the First National Bank. All payments made shall be to the parties entitled thereto, both for materials and for labor upon itemized statements of the materials used in said fallen portion of said building and the labor performed thereon and upon payment thereof, said itemized statement shall be receipted by the parties furnishing said materials and

doing said work.   All materials shall be furnished at cost and all labor shall be done at current rates, in Estherville, of the wages for the respective kinds of work performed. However, the said Wm. Hitaffer and Carl Prouty shall receive no pay or compensation for their personal services under the terms of the original contract and until all other labor and materials have been paid for, nor until the question of the liability for damage occasioned by the collapse of said building has been determined.   It is also agreed by the respective parties hereto that the said Wm. Bartlett may at his option use the certain $500 deposited by the said Wm. Hitaffer and Carl Prouty in the First National Bank of Estherville, Iowa, as collateral bonds, in paying on said materials and labor herein referred to and stated, and the said Hitaffer and Prouty hereby authorize the said First National Bank to turn over and pay to said Bartlett upon his request and showing said contract and receipting for the same the said $500.   Said Bartlett shall keep a full account of the disposition of the said $500 and all parts thereof and report the same to said Hitaffer and Prouty.

This contract bears date August 28, 1902.   On August 22, 1902, the plaintiff, who it would seem had already furnished the contractors other material not now in controversy, wrote to Bartlett asking him what position he had taken with reference to rebuilding and in what position it was likely to " place Hitaffer and Prouty with reference to material furnished."   On August 27, 1902, Bartlett replied to this inquiry, saying:

I expect the building to go forward to completion, and do not see that it will make any difference with regard to material furnished by you and placed in my building provided said material is furnished promptly as needed.   I think they have written you with regard to cast iron columns.   If you have not already advised them please do so at once, and state how soon we can depend upon getting them.   I think they named 12x16-inch column.   This will be larger than needed.   Will let you hear from us as soon as they get an answer from you.   Before anything can be paid I must have an itemized bill of material and know

that it is for my building. Please let me hear from you and oblige.

About the same date the architect, Cox, furnished to Hitaffer and Prouty written plans and specifications directing the substitution of iron columns in place of certain brick pillars in the collapsed portion of the building, giving the dimensions of the columns and plates required and saying: " The owner, William Bartlett, will pay for all the above-mentioned cast iron columns and cast iron plates that are not called for in the original plans at actual cost to the contractors, including freight and drayage." On the strength of this direction the contractors at once wrote to the plaintiff inclosing the instructions of the architect and requested prompt completion and shipment of the columns. This letter Mr. Hitaffer testifies he wrote and sent to the plaintiff at the express direction of the appellant. Bartlett himself testifies, " I told Hitaffer that he could order those columns according to the specifications and that letter," referring to the letter hereinafter quoted. Mr. Cox, the architect, testifies that the substitution of iron columns for brick pillars was at the appellant's direction, and further says: " The reason the requirement that Mr. Bartlett was to pay for the cast iron columns and plates was put in the specifications, was that it was an extra the same as any other extra ordered by Mr. Bartlett or myself. I think I understood at the time that I prepared these specifications and delivered them to Hitaffer that it was to be sent to Shorthill & Co. I think he said he had some correspondence with the Shorthill Company in regard to the columns and he wanted to get them as quick as he could, and for me to prepare the plans."

It should also be said in this connection that a day or two prior to the last-written contract above quoted between appellant and Hitaffer and Prouty, the appellee, apparently in answer to a letter which is not in the record, wrote to said contractors and, in the course of the communication, made the following statement: " In reference to the 12x17 col-

umns, we would advise that we are just now casting some
13x16, and if you could use this pattern we can furnish
them promptly at $52.00 each, on cars at Estherville.
Could cast one of these each day after the receipt of the
order, and assure you we would give the matter our best
attention and save you all the delay possible on the ship-
ment." It is this letter which appellant claims he relied
upon in consenting to the act of the contractors in ordering
the columns. Some days later and after that portion of
the columns and plates for which payment is here claimed
were ready for delivery, the appellant learned, as he says,
for the first time that the columns would cost about $78, in-
stead of $52, each, and telegraphed notice to the appellee
not to ship them.

Appellant disputes the correctness of the decree on the
ground that no contract relations existed between himself
and appellee and that his obligations if any, were to Hitaffer
and Prouty alone. With this contention we are unable to
agree. If his undertaking had been simply to advance
money to Hitaffer and Prouty with which to do the work,
or if he had simply undertaken to reimburse them for the
extra expense incurred by reason of the building having
collapsed, then there would be much force in the objection
here raised, and there would be room for application of the
rule laid down in *Wright v. Terry,* 23 Fla. 160, 2 South. 6,
on which counsel relies. But such is not the case presented
by the record. By the terms of the written contract appel-
lant's undertaking is not to pay to Hitaffer and Prouty, but
" to the parties entitled thereto both for materials and for
labor, upon itemized statements of the materials used in said
fallen portions of the building and the labor performed
thereon and upon payment thereof said itemized statement
shall be receipted by the parties furnishing said materials
and doing said work." This is in strict harmony with appel-
lant's letter to the Shorthill Company where he warns them
that " Before anything can be paid I must have an itemized

bill of the material and know that it is for my building." In short he undertook by making these payments himself to avoid any risk that money placed in the contractors' hands would not be appropriated to its designed purpose, and at the same time prevent if possible the assertion of liens upon his property by contractors and laborers. It is a well-settled rule in this state that subcontractors and laborers are entitled to the benefit of such contracts and may maintain action thereon in their own names. See *Hipwell v. Surety Co.,* 130 Iowa, 656, and other cases there cited.

Moreover the conduct of the appellant in this case, his direction to the architect to substitute iron for brick columns, his assurance that he would pay for them when a properly itemized bill should be presented, his consent or authority to Hitaffer and Prouty that the order be made, are all inconsistent with the idea that he was placing himself under no obligation to the appellee, and should be held sufficient to estop him from now denying his liability.

Nor do we find any merit in his claim to be absolved from liability because of his alleged misunderstanding as to the cost of the pillars. The letter upon which he relies simply states that appellee was at the time making a certain described kind of columns which it could furnish at $52 each. The thickness of the column referred to is not stated, but it appears in evidence that they were made of three-fourths inch material. Thereafter when the architect, acting in appellant's behalf, came to prepare his instructions for their manufacture, he specified that the columns must be one inch thick, thus requiring a very considerable increase in the weight of iron and necessitating, we may presume, a corresponding change or modification of the patterns used. The architect did not profess to make his specification with reference to appellee's letter, nor did the order given to appellee with appellant's consent in any manner refer to the terms of the letter. It is very possible, and perhaps probable, that appellant labored under the impression that the columns were to cost $52 each, but the appellee was in no

manner to blame for his misapprehension. Indeed, under the terms of his contract, it does not appear that he had any right to dictate where or of whom the contractors should order the material, or that he had any right to question the prices agreed upon by them, further than to insist that they be fair and reasonable, and not above their market value. He offered no evidence tending to show that the prices charged by appellee were unreasonable. He has received the benefit of his contract, or if he has not the failure is chargeable to his own fault in refusing to receive the materials manufactured for his use, and there is nothing inequitable in requiring him to pay therefore according to his agreement.

Counsel argue that there is evidence of bad faith, or what they call a " conspiracy " between appellees and the contractors. No such defense is pleaded nor is there any evidence upon which to base such a finding. It is true that it crops out in testimony with reference to materials furnished by appellee to the contractors under the original contract before the collapse of the building, that appellee presented its bill at an excessive price, and when paid by the appellant it turned over to the contractors $250 of the money so received. Upon the face of it this transaction would seem an instance of " graft " pure and simple, for which there can be neither justification nor excuse. It has, however, no necessary connection with the matters now in controversy. It arose under another contract, and no counterclaim is made thereon. It is sufficient perhaps to justify us in looking closely into the later deal to ascertain if it bears any evidence of similar bad faith. This we have done and can only say that so far as the record discloses the facts, we find nothing to show that the prices charged by the appellee are unreasonable or excessive, or that any agreement or understanding exists by which the contractors are to receive any part of the recovery in this case.

We find no reason for disturbing the decree of the district court, and it is *affirmed.*