[No. 7098]

NOONAN ET AL. v. STEIN ET AL.

1. APPEALS—*Stipulation of Council as to the Law*, will not be accepted as binding the court.

2. ——*Former Judgment not Appealed*—What is declared as the law by the district court, in a former judgment in the same cause from which no appeal was prosecuted, will, with the stipulation of counsel to the same effect, be accepted in the court of review, as conclusive.

3. EQUITABLE ASSIGNMENT—*Trust Fund*—No particular form of words is required to create.

4. CONTRACTS—*Construed*—A contract by an irrigation district with a firm of contractors, for the construction of an irrigating ditch, provided (sec. 2) That the work should be commenced within a certain time and prosecuted uninterruptedly, with a force sufficient to insure its completion by a day named, and that the contractors should pay a stipulated sum, as liquidated damages, for each day's delay. (Sec. 12) That if the contractors should fail to comply with the provisions of sec. 2, or should fail in other specified particulars, the district board might require them to discontinue work; that the contractors should immediately comply with this notice, and should forfeit the contract; that the board might then advertise and let a contract for the completion of the work, and charge the cost thereof to the contractors. (Sec. 16) That the contractors should be subject to the statute regarding liens for labor and materials, and indemnify the board against all legal claims or liens upon the work, for labor or materials furnished to the contractors; and the board should charge the same to the contractor as so much paid on the contract. (Sec. 20) That monthly payments should be made on the 15th of each month of eighty-five per cent of the amount due up to and including the last day of the preceding month. (Sec. 21) That when the work was completed and accepted, the board should cause a final estimate to be made of the amount and value of the work; that there should be deducted all previous payments, all damages and other proper charges not before charged to the contractors, the balance to be paid to the contractors at the expiration of sixty days from the completion of the work. *Held* that under sec. 12 the district board in case of the contractors' default were entitled to charge against them, not merely the cost of advertising and letting a new contract, but the cost of the work performed under such new contract, of which the advertisement and letting were a mere incident; that the district were entitled to recover from the contractors all damages proximately resulting from their default; that the fifteen per cent of the contract price retained under sec. 20 was not to be regarded as a fund contemplated and provided for under sec. 16; that though the contract failed to specify for what purpose the fifteen per cent was retained, it was clearly not retained for the sole purpose of protecting the district against creditors of the contractors; that, read in connection with sec. 21, it was apparent that the intention of the parties was that the contractors should receive only so much of the fund so retained as they should have earned, after deducting all damages suffered by the district by reason of any breach of the contract on their part.

4. CREDITOR'S BILLS—*Will Not Lie*, to reach assets of the debtor which he cannot recover in his own name.

5. STATUTES—*Construed*—The statute requiring an irrigation district to exact a bond with sureties from those to whom contracts are awarded for the construction of canals and the like does not exclude the district from other measures of protection e. g. retention of part of monthly estimates, or the like. (Rev. Stat. § 3462.)

*Appeal from Chaffee District Court.*—Hon. Lee Champion, Judge.

Mr. Fred A. Sabin, for appellant; Mr. G. K. Hartenstein, Mr. George D. Williams, Mr. Jos. W. Clark and Mr. Harry L. McGinnis, for appellees.

Mr. Justice Hill delivered the opinion of the court:

This action involves the interpretation of certain portions of a contract between The Otero Irrigation District and Noonan and O'Neill. The court found that the district has in its possession $12,908.64 due Noonan and O'Neill, which the decree holds was a fund created by express agreement for the express purpose of satisfying claims for labor and material furnished to, and used by, Noonan and O'Neill in the construction of a reservoir for the district. By reason of these findings it was held that the appellees (who were subcontractors, materialmen and laborers under the contractors Noonan and O'Neill) were entitled to have most of this fund applied in payment of their claims against the contractors. Judgments were entered accordingly.

The case was disposed of upon the admissions contained in the pleadings and an agreed statement of facts. They disclose that the district was organized under our irrigation district statutes; that it entered into a written contract with Noonan and O'Neill for the construction of a reservoir for which it agreed to pay a certain sum; that the contractors entered upon the construction of this work, during which period they were paid eighty-five per cent of their estimates, fifteen per cent being reserved under the provisions of the contract; that the contractors failed to comply with the terms of the contract, on account of which the district gave them notice to discontinue the work, which they did, all as provided

by the terms of the contract; that the district then advertised for bids for finishing the uncompleted portion, let a contract therefor under which it was completed. This cost the district $17,047 more than it would have cost had it been completed under the terms of the original contract with Noonan and O'Neill. The district claims the right to charge the contractors with this difference, as an offset, or to recoup as much of this amount as will offset the fifteen per cent unpaid under the estimates. The appellees performed labor and furnished material under Noonan and O'Neill who still owe them about $12,000 therefor. After the termination of the contract as aforesaid, the appellees filed mechanics' liens upon the reservoir, and thereafter instituted suits against the contractors, and the district, to recover judgments against the contractors, and to have their liens foreclosed against the property in order to enforce payment. Personal judgments were awarded against the contractors, but the right to maintain their mechanics' liens against the property of the district was denied and the actions dismissed as against the district. No appeals were taken from these judgments. The appellees thereafter instituted the present action against the contractors and the district, in which they make the claim, that the fifteen per cent of the estimates withheld from the contractors by the district was a fund created by express agreement for the express purpose of satisfying their claims for labor and material; that the terms of the contract created an equitable assignment of this fund for the benefit of this class of creditors of the contractors; that in this respect the district constituted itself a trustee of this fund for the benefit of the appellees and others similarly situate. To sustain this position the appellees rely upon certain portions of the contract which read as follows:

Sec. 2. "The work embraced in the contract shall be commenced within fifteen days after the execution of the

contract, - * * * and carried on regularly and un-interruptedly thereafter with sufficient force to insure its completion on or before the first day of January, 1908. Failure to shall render the contractor liable to the Otero Irrigation District in the sum of twenty-five dollars ($25) as liquidated damages for each and every day's delay in commencing the work: For reasons satisfactory to the board, said board may waive any claims upon the contractor for damages here referred to."

Sec. 12. "Should the contractor fail to begin the work within the time stipulated, or fail to prosecute the work in such manner as to insure a full compliance with the contract within the time limit, or fail to perform the said work in compliance with the terms of the contract and the specifications hereto annexed, and the directions of the engineer, or neglect or refuse to remove or rebuild such work as shall have been rejected by the engineer as being defective or unsuitable, the board shall notify the contractor to that effect in writing; and if the contractor shall not within ten days thereafter take such measures as will insure the satisfactory performance or construction of the work within the time limit, the board may notify the contractor to discontinue all work under his contract, and the contractor shall immediately respect said notice and stop work, and cease to have any rights to the possession of the ground and shall forfeit his contract. The board may, thereupon, advertise and let a contract for the uncompleted work in the same manner as was followed in the letting of this contract and charge the cost thereof to said original contractor upon this contract. It is distinctly understood that 'time,' whenever mentioned in this contract, is of the essence of this agreement."

Sec. 16. "The contractor shall be subject to the laws of the state of Colorado regarding liens for labor and

materials furnished for said work, and shall protect and indemnify the board against all legal claims or liens against the work for labor and materials furnished to the contractor, or to parties who may have furnished labor or materials for said work, out of any moneys due or to become due him, and the board shall charge the same to the contractor as so much paid on this contract and the board may from time to time retain such reasonable sums as it may deem necessary for its protection in this behalf, and the contractor shall pay the deficiency arising therefrom upon demand.''

Sec. 20. ''Payments shall be made, monthly, to the contractor, on or about the fifteenth day of each month, in installments of eighty-five per cent of all moneys due for the work done or materials delivered under this contract, up to and including the last day of the preceding month, under and in accordance with the provisions and stipulations of this contract based on estimates of work completed, made and certified to by the engineer and approved by the board.''

The appellees claim it is also necessary to take into consideration a part of section 23 of the irrigation district act of 1905, which reads:

''The person or persons to whom a contract may be awarded shall enter into a bond, with good and sufficient sureties, to be approved by the board, payable to said district for its use, for not less than ten per cent of the amount of the contract price, conditioned for the faithful performance of said contract.''

The district contends that section 21 of the contract should also be considered in arriving at the intention of the parties; it reads:

Sec. 21. ''When all the work embraced in this contract is fully completed agreeably to the stipulations and

specifications of this agreement, and accepted by the board, the board shall cause a final estimate to be made of the amount and value of said work, according to the terms and prices of this agreement; and in making such final estimate, neither the board nor the contractor shall be estopped by the monthly estimates theretofore made, as aforesaid. From the total amount so found, there shall be deducted, firstly, all previous payments made to the contractor, and secondly, all damages and other proper charges under this agreement not theretofore charged to the contractor, and the balance, if any, shall be paid to the contractor, but not until sixty (60) days after completion of his work and contract, upon the giving by the contractor, to the board of directors, a release from all claims whatsoever growing out of this agreement."

Counsel have stipulated that the district's property is not subject to mechanics' liens. A stipulation of counsel as to what the law is, would not be binding upon this court; but, as the record discloses that in a former trial it was thus held, from which no appeal was taken, the question is not before us for determination, and we express no opinion concerning it, but will treat the stipulation and the judgments in the former case (for the purpose of this action) as conclusive of the fact that the district's reservoir could not be held for the payment of these claims, without approving or disapproving of the agreement pertaining to what the law is upon the subject.

The main contention of the appellees is, that under the contract the fund in question was specifically and expressly created and appropriated to satisfy claims for labor and material used in the construction of the reservoir; that by the terms of the contract this fund was in equity assigned by the contractors for this purpose; that the district accepted the assignment and expressly agreed

to apply the funds to the satisfaction of the claims specified, and thereby created itself a trustee of this fund for this purpose. We agree with counsel that no particular language is required to make an equitable assignment or to create a trust fund, but we cannot agree (when this contract is considered as a whole) that it was intended that the owner should retain this fifteen per cent of the contract price for the express and only purpose of paying subcontractors, materialmen and laborers in case of their non-payment by the contractors. We cannot agree to the construction claimed for section 12 which, in case of the failure of Noonan and O'Neill to comply with the contract, would limit the district's damages against them to the cost of readvertising and letting another contract. As we read that portion of this section, when given its proper grammatical construction, also when considered in connection with the remainder of the contract, the phrase "charge the cost thereof" refers to the uncompleted work and not to "advertise and let." The context thus indicates, uncompleted work is the thing about which the sentence is talking, without it the sentence means nothing. The whole of the section contemplates and is providing for uncompleted work. The advertising and letting of another contract is but an incident thereto. According to our construction, upon a breach of the contract, the district had a right of action against the contractors for all proximately resulting damages.

Counsel place considerable stress upon the language contained in section 16, which provides that the contractors shall be subject to the lien laws of the state, and that they shall protect and indemnify the board against all such claims or liens, etc. It further provides that the board may, from time to time, retain such reasonable sums as it may deem necessary *for its protection* in this behalf and the contractor shall pay the deficiency arising

therefrom upon demand. It is evident from this language that the parties were of the opinion that the property would be subject to mechanics' liens, or at least the district was of the opinion that the question was doubtful, for which reason it would take no chances concerning it, but would reserve the right to retain such reasonable sums as it deemed necessary *for its protection* in this behalf in addition to the bond required by statute; but it will be observed that the fund sought to be secured in this action was not reserved under the provisions of this section. The agreed statement of facts, when considered in connection with the contract, shows that this fifteen per cent was retained under the provisions of section 20, which provides for the payment of only eighty-five per cent of the estimate certified to by the engineer and approved by the board. In the answer of the district it is alleged and not denied by the appellees that the district had no notice of these claims until after the contractors had ceased work under the contract, this likewise precludes any assumption that the money was intended to be retained under the provisions of section 16 of the contract.

It is true, as contended that section 20 does not of itself show for what purpose the fifteen per cent is retained, but it is clear that it was not retained for the sole purpose of protecting the district against the claims of the creditors of the contractors; there is no statement therein that it would retain any amounts and pay it to this class of creditors; no trust in this manner is declared. Reading this section in connection with section 21 following, it becomes apparent the intention was that the contractors should, up to the end, receive only so much of the fund retained as they should have earned over and above any damages which the district might suffer by breach of the contract. Section 21 says that from the total so found due there shall be deducted,

firstly, all previous payments to the contractor, and secondly, all damages and other proper charges under this agreement not therefore charged to the contractor, and the balance, if any, shall be paid to the contractor but not until sixty days after the completion, etc. This language contemplates a completion of the work, but the fact that it was not completed would not alter the conditions. The intent is clear that the contractor shall only recover so much of any amount estimated to be due as shall remain after deducting the damages for which they are held liable. We are of opinion that when considered as a whole the contract gave to the district the right to retain the fund in question for the purposes of protecting it generally against all breaches of the contract, and claims of every kind and nature growing out of it, and that this was done solely for the benefit of the district; hence, it was not such a fund as was specifically set apart for the payment of the unpaid bills of the contractors.

Had the fund been reserved under the provisions of section 16 it would not be subject to disposition as contended for by the appellees, for the reason that the reservation was for the benefit and protection of the district, and not for the benefit of the subcontractors, materialmen, etc. Language quite similar was in the contract involved in *School District v. Thomas*, 51 Neb. 740, 71 N. W. 731, where the contract provided that eighty-five per cent of the estimates due the contractor be paid at certain times; that fifteen per cent be retained by the district for a stated period for the express purpose of insuring the district that all claims of subcontractors and laborers or others had been fully paid by the contractor. It was there claimed that this fund was created by express agreement for the purpose of satisfying such claims for labor and that upon account thereof the district became a trustee for the subcontractor and thus a right originated by which the subcontractor became vested with the claim

against the district for such sum. In disposing of this contention the court said:

"Neither can it be said that the retention of the amount of the estimates as they were made, presented, and in part paid, raised the right in the subcontractor to demand any part of such sum as his due, because it had its source in labor performed or materials furnished by him. Nor did the district become a trustee for the subcontractor, and thus a right originate by which the subcontractor became vested with a claim against the district for such sum."

In *Steele v. McBurney*, 96 Iowa 449, 65 N. W. 332, the contract contained a provision that the owner should hold a certain percentage of the contract price until the completion of the work. Held that this was for the benefit of the owner and did not afford a ground of personal liability by the owner to a subcontractor. In commenting upon this subject, at page 333, the court said:

"The provision for holding a part of the contract price until the conditions of the contract were fully complied with was for the benefit of the lodge, to secure the performance of the contract, and to protect it against such claims as might be enforced against it. The provision did not of itself give to the plaintiff any right against the lodge."

A similar announcement is to be found in *Lawrence v. United States* (C. C.), 71 Fed. 228, where the United States let a contract for the construction of a courthouse, where a similar trust was sought to be forced by the assignee of the laborers, wherein the court, at page 230, said: "Nor have they (speaking of the subcontractors) any specific interest in the money so withheld."

In *Roussel v. Matthews*, 62 App. Div. 1, 70 N. Y. Supp. 886, the plaintiff furnished material to the build-

ing contractors under an agreement that the owner would
retain sufficient of the money due the contractors to pro-
tect the plaintiff. Pursuant to this agreement the con-
tractors gave the plaintiff two notes with a writing which
said that "we hereby agree that if these notes are not
paid at maturity that this letter is to be an order on the
owner, naming it, for the amount of the notes." The
notes were not paid at maturity; the owner had retained
the money as agreed. The court held that the material-
men had a right to recover the amounts from the owner,
that this fact constituted a sufficient consideration be-
tween the materialmen and the owner for the owner's
promise to pay.

In *Shorthill v. Bartlett,* 131 Iowa 259, 108 N. W. 308,
the owner agreed with the contractor to pay for the mate-
rials and labor to the parties entitled thereto, etc., thus
placing himself under obligations to them.

In *Bates v. Birmingham Paint & Glass Co.,* 143 Ala.
198, the owner promised to reserve and pay, out of the
contract price, for the material furnished. These cases
are not applicable to the facts here where the owner only
reserved the right to retain certain sums for its pro-
tection.

The fact that the district was by statute required to
take a bond from the contractors for the faithful per-
formance of the contract is no reason why it could not
otherwise protect itself by retaining a certain amount of
the monthly estimate or provide in the contract for such
other protection as it might require. In our opinion this
requirement in no way militates against the construction
which we have placed upon the contract, but to the con-
trary, although not disclosed in the record, it evidently
was a wise precaution upon behalf of the district to make
other provisions for its protection, as it is conceded in
the briefs that the bond taken in this case has become

practically valueless. The record shows that the contractors are insolvent. The argument of the appellees that this money was reserved under a provision of the contract for the benefit of certain creditors of the contractors is a concession upon their part that the district could make provisions in the contract for its protection other than the bond required by statute.

The court having erred in holding that this fund was by agreement reserved for the express purpose of paying a certain class of creditors, and that the district therein agreed so to do, and that this agreement constituted an assignment of this fund, it follows that it cannot be disposed of in this manner. Neither can it be reached by assuming that this action is in the nature of a creditor's bill for the reason that a creditor's bill will not lie to reach assets of the debtor which the debtor cannot recover in an action in his own name.— *Bonte v. Cooper*, 90 Ill. 440; *Nolting v. National Bank*, 99 Va. 54, 37 S. E. 804; *Weckerly v. Taylor*, 74 Neb. 84, 103 N. W. 1065; *Browning v. Bettis*, 8 Paige's Ch. 568.

In *German Nat. Bank v. First Nat. Bank*, 59 Neb. 14, 80 N. W. at page 49, in commenting upon this question it was said:

" 'This action' say counsel, 'as it now stands, is an action on the part of a creditor to subject to its claim assets of a debtor not reachable by execution.' This being the character of the case, it is evident the plaintiff's rights are precisely the same as those of the hardware company. The plaintiff cannot succeed unless its debtor had an actionable demand against the appellant when this suit was instituted."

The language of the Nebraska case is applicable here. According to the agreed statement of facts the contractors have no claim against the district which could

be enforced for the reason that by the terms of the contract the district is entitled to a greater amount for damages on account of their failure to complete the reservoir than is due the contractors.—25 Am. & Eng. Ency. of Law (2nd Ed.), 551, 552.

For the reasons stated the judgment is reversed and the cause remanded.

*Reversed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE GABBERT concur.