Clark v. Dayton.

HENRY T. CLARK, PLAINTIFF IN ERROR, v. WILLIAM L. DAYTON, THE BOARD OF COUNTY COMMISSIONERS OF BUFFALO COUNTY, PATRICK WALSH, J. E. CHIDESTER, AND GEORGE FLEHARTY, COMMISSIONERS THEREOF, AND JOSEPH SCOTT, COUNTY CLERK THEREOF, DEFENDANTS.

1. **Pleading:** AVERMENT OF FRAUD: An allegation in a petition that a claim presented to the county commissioners for allowance "was unjust and was audited and allowed through fraudulent and undue means," is too general for either the admission of proof, or the entry of a decree establishing fraud against any of the parties to the transaction.

2. **County Bridges:** POWER OF THE COUNTY COMMISSIONERS. Section sixteen of the road law, as construed by this court in the case of *The People v. Commissioners of Buffalo county*, 4 Neb., 150, applies to contracts for erection of bridges as well as to those for the improvement of roads, and prohibits the commissioners from entering into a contract for the expenditure of more than double the amount of money on hand to the credit of the bridge fund.

3. ——; ——: While it is true that the general road fund may be lawfully applied to the erection or reparation of permanent culverts and bridges, it is *not* true that the bridge fund raised

from the five mills levy, under section fifteen, can be used in the general improvement of roads, but must be devoted exclusively to the object for which this levy may be made.

4. —————: —————: The contract in this case provides for the payment of the cost of the bridge, in excess of the nine thousand dollars received in county bonds, by warrants drawn on the *bridge* and road funds. The petition alleges the want of sufficient money in the *road* fund to justify the contract, but no mention whatever is made of the condition of the special *bridge* fund. *Held*, that for this omission the petition was fatally defective.

5. —————: —————: Although this contract was illegal by reason of the failure of the commissioners to advertise for proposals under a plan and specifications, still the contractor having completed the bridge, and the same having been accepted by the commissioners, he is entitled to compensation. Under such circumstances payment will not be enjoined at the suit of a taxpayer.

6. **Claims against a County:** ALLOWANCE OF: REMEDY: The building of county bridges being entirely within the control of county commissioners, and they having accepted the bridge from Clark, and allowed his claim therefor, the remedy for any person feeling himself aggrieved was by appeal to the district court. Having neglected this remedy the plaintiff cannot resort to equity for relief by an original suit.

ERROR from the district court of Buffalo county. Tried below before GASLIN, J. The action there was upon the petition of Dayton, a taxpayer, in behalf of himself and all others, taxpayers of said county, against the board of county commissioners. Clark was not made a party to the action, but in the course of the proceedings, the other defendants making default, he was admitted to defend as the real party in interest. A perpetual injunction was granted as prayed, and Clark brought the case up by petition in error.

*J. R. Webster & L. C. Burr* (with whom was *J. M. Woolworth*) for plaintiff in error.

I. Equity cannot be invoked in this case for several

distinct reasons.    Dayton had a clear, adequate, and complete remedy at law.    Gen. Stat., 138.

1.    This plaintiff complains here that he was aggrieved by the action of the board in allowing the claim of Clark.    He is then by his own showing within the terms of the statute.

2.    The system of county government adopted by this state is taken in its general scope from the Indiana statute upon the same subject, and had received judicial construction before its adoption by this state, and it was distinctly held that a taxpayer may appeal from precisely such an order as that of which the plaintiff complains here.    *State v. Buckles*, 39 Ind., 273, 274.    *Harlan v. Carroll*, 13 Ind., 247.    And in other states, under similar statutes, decisions are to the same effect.

3.    While it may be true in some cases that a taxpayer may not have actual knowledge of the order by which he is aggrieved, it is matter of doubt in such cases whether he would not be affected with constructive notice of the proceedings of a public body and of a public record so as to deprive him of the right to complain. It could not be contended that want of knowledge by a litigant in the district court of the return of the verdict of a jury, extended the time within which he is required to file his motion for a new trial.    But while it may be conceded that the taxpayer's ignorance of the order of the board would give ground for the intervention of equity, it is very clear that every circumstance from which negligence on his part may be implied should, in a petition invoking the equity powers of the court, be distinctly alleged, and if denied, clearly proven.    In no other way can the force of the statute be preserved; in no other way can parties deal with counties or their agents, the board of commissioners.    *Stephenson v. Wilson*, 2 Vern., 325.    *Blackhall v. Coombs*, 2 P. Wms., 70.    *Holworthy v. Mortlock*, 1 Cox, 141.

*Humkey v. Vernon*, 2 Id., 12. *Stevens v. Praed*, 2 Ves. Jr., 529. *Bateman v. Willod*, 1 Sch. & Lef., 201. *Ware v. Horwood*, 14 Ves., 31. *Western R. R. Co. v. Babcock*, 6 Met., 346, 352. *Capetown v. Moon*, 3 Jones' Ex., 178. *Diman v. Providence, &c., Co.*, 5 R. I., 130, 135. *Vaughn v. Johnson*, 1 Stockt. N. J. Eq., 173, 177. *Gifford v. Thorn*, Id., 702.

4. But in this case it is unnecessary to resort to such inquiries. The bill itself shows that there was no ignorance on the plaintiff's part of the order of which he complains. That order was made, as he alleges in paragraph XII of his amended petition, on the fifteenth of August, 1874. The record shows, and he distinctly avers in paragraph XI of his amended petition, that the original petition was filed on the twenty-ninth of August, 1874. This shows, that within fourteen days from the entry of the order he knew of it, and he knew that he was aggrieved by it.

He then intelligently and purposely elected his remedy; he declined that which the law gave him; he sought to come into a forum whose first principles of administration close its doors against him.

5. It is submitted that the better rule is as established by the weight of authority, that a taxpayer cannot, under any circumstance, maintain a petition for injunction in a case like this. *Doolittle v. The Supervisors*, 18 N. Y., 155. *Roosevelt v. Draper*, 23 Id., 318. *Hall v. Cushman*, 6 Met., 426. *Frost v. Belmont*, 6 Allen, 152. *Craft v. Jackson County*, 5 Kan., 518. *Conklin v. Commissioners*, 13 Minn., 454. *Miller v. Grandy*, 13 Mich., 540. *Morgan v. Graham*, 1 Woods, 124.

6. But if this court shall adopt the view held in cases other than those cited, it will appear upon an examination of them that they are all, or at least nearly all of them, where a city was a party and where no

remedy was provided by statute for reviewing the action of the authorities. There is thus a very wide distinction between this case and such cases.

II. There is another distinct and decisive reason why equity should not interfere in behalf of the plaintiff below in this case. This record shows that he has negligently stood by and suffered Mr. Clark to expend his money on the faith of his contract; he has waited until he has obtained all the benefit of the expenditure, and until the body of the taxpayers have obtained all the benefit of the expenditures—drawing Mr. Clark on as far as he could to make them, and having placed him in a position from which he cannot retreat, he appeals to a court of equity to prevent him from being paid what is a fair and just return. The answer distinctly alleges in paragraph XV, that from the making of the contract down through the whole progress of the work to its completion, the plaintiff knew of all the matters and was silent, and these allegations are not denied by the reply. He was silent when he ought to have spoken; he shall not be heard now when he ought to keep silent. The question is not whether Mr. Clark has legal rights here which the ordinary courts of law will enforce; the question is whether the court of equity will, by the extraordinary process of injunction, interfere on behalf of such a plaintiff? *Wiggins v. Mayor, etc.*, 9 Paige, 24. *Tash v. Adams*, 10 Cush., 252. *Hellenkamp v. Lafayette*, 30 Ind., 192. *Kellogg v. Fly*, 15 O. St., 64. *Weber v. San Francisco*, 1 Cal., 455. *Lafayette v. Fowler*, 34 Ind., 140. *Sleeper v. Bullen*, 6 Kan., 300. *Motz v. Detroit*, 18 Mich., 495. *Sedam v. Williams*, 4 McLean, 51. *Russ v. Wilson*, 22 Me., 207. Bigelow on Estoppel, 508.

*S. S. Savidge* and *E. Wakeley*, for defendants in error.

I.   It is insisted by plaintiff in error that if a tax-payer and citizen has any remedy it is by appeal from the action of the board allowing the claim.

1.   We do not concede that a taxpayer, as such, is a person "aggrieved" within the meaning of the statute. We claim that the appellant must have some direct individual interest in the matter, determined by the board. In an appeal he is the only party on one side, and the county is the party on the other.   But in such an action as this he proceeds in behalf of all taxpayers of the county.

2.   If a taxpayer may appeal, this is not the only remedy.   Look at the consequences of such a holding. The appellant may at any time dismiss his appeal.   If he does so, all power to review and annul the order of the board is gone.   Other taxpayers, not having appealed, have no remedy.   So that every taxpayer must take an individual appeal, or take the risk of the order becoming irreversible.   If one may appeal, all may.   And so there may be as many appeals as there are taxpayers in the county, all seeking the same result, to-wit: the correction of a single order of the board.   Surely the statute does not contemplate such a state of things. *Reppy v. Jefferson Co.*, 47 Mo., 66.   *Knowlton v. Guttenberg*, 5 Iowa, 380.   *Murphy v. Commissioners*, 14 Minn., 67.

3.   The order is not merely a voidable one, to be corrected by a review.   It is wholly void—a point we will discuss under the next head.

II.   It is further insisted that, as the board is a special tribunal empowered to audit and allow claims against the county, its decision is final unless reviewed by some direct proceeding therefor.

This principle is correct within its proper limits.   But it applies only to "accounts chargeable against the

county." It is argued, however, that when a claim is presented for allowance the question submitted to the board is whether it is "chargeable against the county," and their decision on this question is final and conclusive unless reviewed. This argument proves too much. If sound, then a claim for building a railroad through the county—for erecting a mill—for a ferry boat to carry passengers and freight across the Platte—or for any other purpose, utterly foreign to the duty or power of the county, may be presented and allowed, and so become "chargeable against the county" by the mere decision of the board of commissioners that it is so. This cannot be correct.

The commissioners must keep within their jurisdiction. When they allow an account for something which the county has no power to meddle with, and which is not "chargeable to the county," they act without jurisdiction, and their action is simply void.

It will be said that this is not such a case. That counties have the power to improve roads and build bridges and contract indebtedness therefor. Wherefore the commissioners may allow claims for such work. But this case is where a contract which the statute in terms forbade the commissioners to make; a contract which was void as being in excess of the authority of of the commissioners. The claim allowed was for the performance of this contract. What is the practical difference between allowing an account for a work which the county has no authority to construct, and allowing an account for a work which it might construct at a cost not exceeding so much money, when the account so allowed exceeds many times the amount authorized by law? *Stetson v. Kempton*, 13 Mass., 273. *Parsons v. Goshen*, 11 Pick., 396. *Vincent v. Nantucket*, 12 Cush., 503. *Claflin v. Inhabitants*, 4 Gray, 502. *Supervisors v. Ellis*, 59 N. Y. 620. *People v. Lawrence*, 6 Hill, 244.

1 Dill Mun. Corp., 412.　*Ohio v. Latman*, 22 Ohio State, 546.　*City v. Rankin*, 2 Kan., 357.　Cooley Cons. Lim., 195.　*Hooper v. Ely*, 46 Mo., 505.　*Richards v. Warren Co.*, 31 Iowa, 381.

III.　It may be said that, although the contract was void, yet Clarke had built a bridge and presented a claim for it, and the commissioners could allow the claim without reference to the legality of the contract.

That is, they are forbidden by the statute to make a contract for road work or bridges requiring the expenditure of more than twice the amount of road money in the treasury, or without letting to the lowest bidder. But if they make no contract as to amount, or make an illegal one, they may "allow" any amount whatever for the work when done, and mortgage the revenues of the county for an indefinite time to come to pay for it. They have no power to make the contract, but, with or without a contract, they can do precisely what they are forbidden by law to agree to do.

Can an express statute, for protecting taxpayers and restricting the power of taxation, be thus frittered away and successfully evaded?

We say that when the commissioners thus allowed the amount due on a contract which they had no jurisdiction to make—thus performed, on their part, the conditions of a void contract—they exceeded their jurisdiction, and their action was simply void.　Or, laying out of view the matter of performing a void contract—when they allowed for the work in question an amount largely exceeding the limit of expense expressly imposed by statute for such work—the action was as plainly void as if it purported to be the performance of a void contract.

It is the settled practice in Nebraska, in both the state and United States courts, that tax-payers and citizens may enjoin public officers from doing a wrong which

will affect their pecuniary rights. All suits to enjoin the issue of bonds illegally voted are sustained on this principle. There is no other adequate remedy. There is no public officer whose duty it is to enjoin the commissioners from paying out public moneys contrary to law. It is doubtful if the district attorney could institute a suit for the county for that purpose.

There is some conflict of authority on the question, but the better reason and decided weight of authority is in favor of the practice in this state.

There is the same reason for a private citizen being allowed to enjoin public officers from violating official duty as for permitting him to compel them by mandamus to perform official duties. Dillon on Municipal Corp., § 731, et seq. High on Injunctions, § 804. *Drake v. Phillips*, 40 Ill., 388. *Cumberland Co. v. Webster*, 53 Ill., 141. *New London v. Brainard*, 22 Conn., 553. *Scofield v. School District*, 27 Conn., 499. *Merrill v. Plainfield*, 45 N. H., 126. *Danville v. Montpelier*, 43 Vt., 144. *Baltimore v. Gill*, 31 Md., 375. *Foster v. Coleman*, 10 Cal., 278. *Hooper v. Ely*, 46 Mo., 505. *Harney v. R. R. Co.*, 32 Ind., 244. *Galloway v. R. R. Co.*, 63 N. C., 147. *Rice v. Smith*, 9 Iowa, 570. *Hartwell v. Armstrong*, 19 Barb., 166. *Williams v. Peinney*, 25 Iowa, 436.

LAKE, Ch. J.

The action in the court below was brought to restrain the board of commissioners of Buffalo county from paying Clark, the plaintiff in error, for building a bridge across the Platte River, in pursuance of a contract entered into between said Clark and the two boards of commissioners of the counties of Buffalo and Kearney. The case was determined upon the pleadings alone, no testimony having been offered by either party.

It is not claimed that the contract in question was in any respect fraudulent on the part of either of the parties to it. Indeed, the only suggestion of fraud which the petition contains, is respecting the final allowance of Clark's bill by the commissioners, of which it is merely said that it "was unjust, and was audited and allowed through fraudulent and undue means." But by what particular means, in what respect they were fraudulent, or by whom they were resorted to, does not appear. This averment of fraud is altogether too general for either the admission of proof, or the entry of a decree establishing fraud against any of the parties. Wherefore, in the consideration of the case, we must look upon all that was done as being entirely uninfluenced by any fraudulent or unjust motives, and in the honest belief that it was within both the letter and the spirit of the law. This being the attitude of these parties, I will notice the reasons urged on behalf of the defendants in error why the judgment of the district court ought to be affirmed.

I. The first point made is: that the contract for the erection of the bridge, so far as it concerned Buffalo county, was absolutely void for two reasons: 1st, because it was in excess of the authority of the commissioners as limited by the statute, and 2d, for the reason that the commissioners did not advertise for bids and let the contract to the lowest bidder, under a plan and specifications previously agreed upon. This want of authority on the part of the commissioners is based upon the fact alleged in the petition, and which seems to have been conceded, that, at the time the contract was made, there was not sufficient money on hand belonging to the *road* fund to warrant so large an expenditure. On this point the petition alleges, " that at the time of the letting of the said contract, the total amount of money on hand in

the county road fund of Buffalo county, was only $62.12, and the amount of such fund did not at any time thereafter, until the completion of said bridge, exceed the sum of $400.00."

This allegation is evidently based upon section sixteen of the road law, as construed by this court in the case of *The People v. Commissioners of Buffalo County*, 4 Neb., 150. This section provides that: "The county commissioners may let contracts to the lowest competent bidder for the improvement of such roads as may be of general necessity, and pay for the same by orders on the county treasury, payable out of the county road fund; but no contract shall be entered into for a greater sum than double the amount of money on hand in the county road fund." But while under the rule established by a majority of the court in that case, this provision is applicable, and must govern in the expenditure of funds realized from the five mill levy for bridge purposes, it most certainly does not wholly destroy the distinctive character which this fund possesses. The tax, when levied, is a bridge tax, and when collected, the money constitutes a special *bridge* fund—nothing more and nothing less. And it can be lawfully expended only in " building or repairing permanent and substantial culverts and bridges, under the direction of the county commissioners." While it is doubtless true, that the ordinary road fund may be used in the building and reparation of bridges, it is *not* true that this particular bridge fund can be expended in the general improvements of roads.

Now the contract between Clark and the county commissioners provides that, for the payment of the cost of the bridge in excess of the nine thousand dollars in county bonds, he was to receive warrants on the " *bridge* and road funds," not upon the road fund alone. And while the petition by distinct averment shows the al-

most total want of money in the treasury to the credit of the road fund proper, no mention whatever is made of the condition of this special bridge fund at that time. I am of the opinion that, in this particular, the petition is fatally defective, and fails to show that the commissioners exceeded their authority in making the contract.

As to the objection that the contract was let without due notice, and with no plan or specifications previously agreed upon by the commissioners, it may be answered that, even conceding these preliminary steps to be necessary to the validity of the contract, as was held by a majority of the court in *The People v. Commissioners of Buffalo County*, before cited, it by no means follows that equity will enjoin the payment of Clark's claim. I am of the opinion that the objection came .too late. Clark was permitted to go on under the contract, on the supposition at least that the law had been fully complied with, and expend a very large sum of money in the erection of this bridge, which is now accepted by the proper local authorities, and thrown open to public travel. If there be any inflexible rule of equity which, under the circumstances surrounding this case, requires this court, at the instance of a taxpayer of the county, to enjoin payment by the commissioners of the amount justly due for the work, I am not aware of it. The aid of equity cannot be successfully invoked for any such purpose.

II. But there is still another objection equally fatal to this proceeding. Even if it were conceded that the allowance of Clark's claim by the commissioners, in the absence of fraud or other undue means, was reviewable in the courts at the instance of a taxpayer, the plaintiff had a plain and adequate remedy by appeal to the district court. *Brown v. Otoe County*, ante page 111. Having neglected this remedy by which any wrong done to him, and of which he had the right to com-

plain, could have been redressed, he cannot resort to equity for redress by an original suit. For these reasons the decree of the district court must be reversed and one entered in favor of the plaintiff in error.

JUDGMENT ACCORDINGLY.