RAY H. LARSEN, APPELLANT, V. OMAHA TRANSIT COMPANY, A CORPORATION, FORMERLY KNOWN AS OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, ET AL., APPELLEES.

95 N. W. 2d 554

Filed March 20, 1959. No. 34473.

*Donald P. Lay, Frank C. Heinisch* and *John J. Higgins, Jr.,* for appellant.

*William P. Mueller* and *Kennedy, Holland, DeLacy & Svoboda,* for appellees.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The petition, the basis for the recovery of damages by appellant from appellees resulting from injuries inflicted upon the former as the result of a collision of appellant and a bus of the Omaha Transit Company

because, as it is alleged, of the negligence of appellees, makes in substance the following statements: The Omaha Transit Company, hereafter referred to as the company, was on December 20, 1954, the owner of a bus operated by Edwin L. May, designated May herein, which collided with appellant at the intersection of Sixteenth and Douglas Streets in Omaha. May was an employee of the company and was acting within the scope of his employment. The collision severely and permanently injured appellant and the proximate cause thereof was the negligence of appellees consisting of failure to keep a proper lookout for pedestrians ahead as the bus of the company was moving from the north toward the south on Sixteenth Street; operating the bus so closely to the curb and sidewalk at the southwest corner of the intersection where the accident occurred when the operator knew or should have known that there were many people standing on the edge of the sidewalk and curb that the right-hand mirror which extended from the bus hit appellant; operating the bus at an unreasonable speed under existing conditions of 25 miles per hour; failure to keep the bus under proper control when by the exercise of due care by the operator thereof the accident could have been avoided; failure to operate the bus in such a manner as to have avoided a collision of it with appellant which could have been done by due care and caution of the operator of it; failure to warn appellant of the approach of the bus in the lane immediately adjacent to the curb; and failure to comply with an ordinance of the city of Omaha, No. 16274, in that the bus was put in motion and was being operated while there was a passenger standing forward of the marker line or strip in the bus in violation of the ordinance. The expectancy of appellant is 28.22 years. The items of damages claimed by appellant are stated in detail.

The answer of appellees admits the company was the owner of the bus and that May was operating it at the

time of the accident, denies all other claims made by appellant, and pleads new matter as follows: The bus, traveling south on Sixteenth Street, crossed Douglas Street on a green light and was proceeding toward the south. Appellant left the sidewalk on the west side of Sixteenth Street south of the east-and-west crosswalk and moved immediately into the path of the bus at a time when it was in such close proximity to appellant that a collision resulted. Any injuries appellant received were the proximate result of his negligence which was more than slight because appellant moved from a place of safety on the sidewalk into the immediate pathway of the bus in such close proximity thereto as to result in an impact between himself and the bus; appellant failed to look toward his left or the north when he stepped from the curb into the street and into the pathway of the bus; and appellant attempted to cross the street at the place he did at a time when the signal lights were red for east-and-west traffic. The new matter in the answer was controverted by a reply.

The verdict was for appellees. A motion for new trial was denied and judgment was rendered in harmony with the verdict. The judgment and denial of the motion for a new trial are the cause of this appeal.

The record contains evidence tending to establish the following matters: The accident occurred about 19 feet south of the southwest corner of the intersection of Sixteenth and Douglas Streets in the city of Omaha on the afternoon of December 20, 1954. Douglas Street is an east-and-west street and Sixteenth Street is a north-and-south street. The former was 60 feet wide west of Sixteenth Street and the latter was 60 feet from curb to curb. The crosswalk on the south side of Douglas Street across Sixteenth Street was 15 feet wide and the crosswalk on the west side of Sixteenth Street across Douglas Street was 18 feet wide. The boundaries of each of the crosswalks were identified and marked by white lines. It was about 19 feet from the south

curb of Douglas Street to the traffic light on the west curb of Sixteenth Street near the west end of the south boundary line of the crosswalk across that street. The traffic light was across the sidewalk to the east from the northeast corner of the Brandeis store building. There was a bench 5 feet long and 25 inches wide on the sidewalk 9 feet south of the traffic light and 3 feet west of the curb on the west side of Sixteenth Street. There were no traffic lane markings on Sixteenth Street.

Appellant was on the afternoon of December 20, 1954, in the Brandeis store and at about 3 o'clock he came out of the store through the north entrance for the purpose of going east to and across Sixteenth Street and to his car which was located some place to the east. There were many pedestrians in the area. There was a tank about 4 feet in diameter near the center of the intersection of the sidewalk on the south side of Douglas Street with the sidewalk on the west side of Sixteenth Street where funds were being solicited and received for the Salvation Army. Appellant walked to the curb on the west side of Sixteenth Street south of the traffic pole which was directly west of the line which marked the south boundary of the crosswalk across Sixteenth Street. The pole was to the left of appellant. He testified he was right against the pole. There was no one between him and the pole.

May had been a bus operator for the company in Omaha for 9 years. He was at the time of the occurrence which is the cause of this litigation in charge of and was operating a bus of his employer identified as bus No. 1406. The bus was at about 3 o'clock in the afternoon of that day proceeding south on the west side of Sixteenth Street north of Douglas Street. It made a stop between Dodge and Douglas Streets to discharge and take on passengers. It then traveled to the crosswalk on the north side of Douglas Street where it momentarily came to a stop or a near stop because of a red traffic light at which time the traffic light changed

to green and the bus proceeded into the intersection of Douglas and Sixteenth Streets. There were no vehicles parked on the west side of Sixteenth Street and the bus traveled near to the west curb of it. When the bus was in the intersection May observed persons standing off the curb on the south side of Douglas Street at or near the southwest corner of the intersection. The horn on the bus was lightly sounded and these persons moved back from the curb. The estimated speed of the bus when it approached the south side of Douglas Street was 10 to 12 miles per hour. About the time the bus approached or entered the crosswalk on the south side of the intersection May saw a man come quickly off, or as he expressed it, "dart off" the curb in the vicinity of the crosswalk. May immediately jammed on the air brakes of the bus and it came almost to a stop as the front of it came in contact with the pedestrian who was later identified as appellant. The brakes were applied with such force that May was brought up out of the driver's seat and over the driving wheel. May estimated the distance of the bus from the man when May saw him move into Sixteenth Street as about 17 or 18 feet. The distance the bus moved after it struck appellant was not more than 3 or 4 feet and there is evidence that it was a less distance. The speed of the bus at the time of the impact was not more than 3 to 5 miles per hour. There was a 4½ percent upgrade at that location and the bus was nearly stopped at the time the accident occurred. The right side of the bus at the time of the accident was estimated as having been from 18 inches to 4 feet east of the west curb of Sixteenth Street. The bus was parallel to the curb. When May first saw appellant he was coming off the curb toward the east into Sixteenth Street south of the south side of the crosswalk. He faced east and made no movement other than forward. The elapsed time after May saw him come into the street in the lane the bus was occupying until appellant contacted the bus

was difficult to measure or express. When the operator of the bus saw appellant he applied its brakes, the appellant was struck, and the bus stopped. There was no opportunity to make measurements or fix any period of time; "* * * it happened very quickly, all right now." The operator was asked: "Would you say as much as 5 seconds elapsed?" His answer was: "It couldn't have been that long." The place of contact of appellant with the bus was on the right front of it. The glass in the front signal light of the bus was broken. It was near the right front corner of the bus. When May suddenly and forcibly applied the air brakes of the bus he was brought up out of the seat he occupied and he saw appellant as he was struck by the right front of the bus and as he was forced from it where he fell near the west curb of Sixteenth Street. Severe injuries were inflicted on appellant and there is evidence that sustains the conclusion that he has some permanent disability.

May, as the bus approached the place of the accident, was in the seat in the bus near the left front of it. The seat is located on a base or platform and a post which supports the seat. The bottom of the seat is 28 inches above the floor of the bus. The driver has easy access to the controls. The bus is so arranged and equipped as to afford the driver unobstructed view in all directions. May was looking in front of the bus and was attentive to its operation and the surroundings before and at the time of the accident.

Dr. Oliver Paul Rosenau and his son of Eustis at about 3 p. m. the day of the accident walked east from Seventeenth Street on the north side of Douglas Street to Sixteenth Street and stopped on the north curb of Douglas Street. They proceeded south from the northwest corner of the intersection of Douglas and Sixteenth Streets. They were the first persons to move south when the traffic light changed to green. There were many people in that area but there was no one who

preceded them across Douglas Street. Dr. Rosenau testified as he approached the south side of Douglas Street he saw what appeared to him to be a number of green bills flying in the air to the east and landing in Sixteenth Street. Some of them landed 2 or 3 feet east of the west curb line and others as far east as the middle of the street. He was then within 3 or 4 feet of the curb on the south side of Douglas Street. About the time the bills landed in the street he saw a man start east off the curb and step east facing Sixteenth Street. He was in the street and the bus hit him. The man who was struck was appellant. He wore a gray topcoat and a gray hat. He was a well-built man but not fat. He was larger and taller than the witness who was 5 feet 8 inches tall. The witness said the man was in the street and was facing east when he was struck by the bus and he did not face in any other direction before he was hit. The bus was about even with the witness as he approached the south curb. It was less than 1 second from the time the man stepped to the east until he was hit by the bus. As the witness and his son came south across Douglas Street they were on the extreme left of the crosswalk with no one preceding them. They were facing the south in that position near the south curb when the accident happened. The witness testified the man stepped from the curb south of the crosswalk a short distance and the bus hit him and threw him toward the curb with his head to the south. The bus was near the west curb of Sixteenth Street.

The son of Dr. Rosenau testified he was in Omaha December 20, 1954, and was with his father on the southwest corner of Douglas and Sixteenth Streets with the intention of going south to the Regis Hotel. They had crossed Douglas Street walking south. The traffic lights for southbound traffic were green as they crossed Douglas Street. He and his father were the first persons to cross the street. They were on the left of the crosswalk. The witness noticed a man between the

traffic signal pole and the refuse box. He stepped out onto the street and almost instantaneously the bus came in contact with him. The witness and his father had reached and were at the curb on Sixteenth and Douglas Streets when the man stepped off the curb to the east and almost at the same time the bus struck him. The injured man was lying in the street after the accident. The witness and his father went to the injured man and witness' father examined him to ascertain if he had been dangerously injured. The bus concerned in the accident stopped almost immediately. It was not going fast at all. It traveled only about 4 feet after the collision. When the injured man went into the street he was facing east and he did not move in any other direction than to the east until he was struck by the bus. The witness was asked how long it was from the time the man left the curb until he was hit and the answer of the witness was that it seemed to be almost instantaneous.

A witness who had lived in Omaha 28 years and who was in charge of mortgage loans and property management for a life insurance company testified he was at Douglas and Sixteenth Streets at about 3 o'clock or a little after on the afternoon of the day of the accident, participating in the Salvation Army Kettle Day Drive for the Junior Chamber of Commerce. He was at about the center of the intersection of the sidewalk on the south side of Douglas Street with the sidewalk on the west side of Sixteenth Street. The number of pedestrians in the area at that time was about average. He testified he looked toward the southeast and he saw the bus and a man stepping off the curb at approximately the same time. The bus was a few feet to the north of the man that was hit and he stepped off of the curb into the right corner of the bus. He moved to the east and he appeared to be looking straight ahead, that is, due east. The witness located the place where the man stepped from the curb into Sixteenth Street as several

feet, probably 4 or 5 feet, south of the south line of the crosswalk. The bus was about even with the traffic light pole when he first saw it and the man who was injured. The bus was then 3 or 4 feet from the man. The bus stopped immediately after the man was struck by the bus and he was thrown to the south. The right side of the bus was near the west curb on Sixteenth Street and the front end of the bus was estimated by witness to have been north of the transit bench on the sidewalk which was south a short distance from the traffic signal light.

A witness who was and had been for several years manager of the membership service department of the Omaha Chamber of Commerce was at the time of the accident at approximately 3 p. m. in the trailer on the east side of Sixteenth Street near the south side of the crosswalk referred to above. The trailer was the headquarters of the Junior Chamber of Commerce during its participation in the Salvation Army Kettle Day. The witness looked through a window to the west from the inside of the trailer and he immediately saw a man struck by the right side of an Omaha Transit Company bus. The man, when the witness saw him, was in a position as if he had been stopped in motion while in the act of stepping. He was facing northeast, more east than any other direction. He was struck by the right front side of the bus and it looked like he got hit on the head. The bus was moving due south and it stopped immediately.

Appellant made a statement on the afternoon of December 21, 1954, reported by a court reporter, in which appellant said he was a manufacturer's representative and sold various lines of candy. He said that he was not working on the kettle drive the day of the accident. He was asked about the accident involving him and a bus and in response thereto he said: "Well, I'll tell you, I just don't think I could tell you anything about it. I got my attorney, Frank Heinisch, on this; I told

my attorney to check into it." Appellant asked the representative of the company who was present at the time to talk with Mr. Heinisch. He said that Mr. Heinisch was not connected with the Mecham office but had his own office in the City National Bank Building. Appellant said he was blank as to what happened at the time of the accident and he would not be able to tell his attorney any more about it than he had included in his statement made to the court reporter and the representative of the company.

This appeal is the second appearance of the case in this court. Larsen v. Omaha Transit Co., 165 Neb. 530, 86 N. W. 2d 564. The disposition of the first appeal is not important to any matter presently at issue.

The jury resolved the issues of the case in favor of appellees. In considering and deciding the sufficiency of the proof to sustain the verdict for them it must be viewed most favorably for them, controverted matters must be decided in their favor, and they must have the benefit of reasonable inferences deducible from the proof. This court is not accorded the duty or authority in reviewing an action at law to resolve conflicts or evaluate evidence. It is presumed in such litigation that all controversy of fact was decided by the jury for the successful party and the finding of a jury on conflicting evidence will not be disturbed unless clearly wrong. Crunk v. Glover, 167 Neb. 816, 95 N. W. 2d 135; Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913. It is because of this that the evidence tending to support the verdict is noted in the foregoing recitation and generally the evidence contradictory to it has been disregarded.

Appellant claims the giving of instruction No. 3 was prejudicial error because it contains in substance the language that defendants (appellees) allege that after the bus operated on Sixteenth Street had crossed Douglas Street and was proceeding south, the plaintiff (appellant), leaving the sidewalk on the west side of Six-

teenth Street at a point a short distance south of the south crosswalk, moved immediately into the path of the bus at a time when the bus was in such close proximity to plaintiff that a collision inevitably resulted and that any injuries suffered by plaintiff were proximately caused by his negligence consisting of his moving from a place of safety on the sidewalk into the pathway of the bus in such close proximity thereto as to result in the impact between him and the bus; his failing to keep a proper lookout toward the north when he stepped into the pathway of the bus; and his attempting to cross the street at the place where he did when the signal traffic lights were red for east-and-west traffic. This instruction advised the jury the defenses of appellees as pleaded in their answer. The charge to the jury informed it that what the court told it as to the pleadings was merely the statements and contentions made therein by the parties to the case and, except as to any admissions therein, were not to be taken by the jury as evidence in the case. It is not claimed by appellant that the trial court incorrectly interpreted or misstated the contents of the answer of appellees. The argument in this regard is that there is lack of competent evidence tending to establish the allegations of the pleading of appellees as set forth in the instruction and that it is prejudicial error to include in a charge to a jury allegations of a pleading concerning which there is no supporting evidence.

Likewise appellant challenges one paragraph in instruction No. 15 to the effect that if one being in a place of safety sees or by the exercise of ordinary care should see an approaching vehicle in close proximity to him, suddenly and voluntarily moves therefrom into the path of the approaching vehicle and is immediately struck by it, his conduct constitutes negligence or contributory negligence in a degree which, as a matter of law, precludes recovery for any injuries he sustained. Also one of the several paragraphs in instruction No.

17 is assigned as error by which the court charged the jury that if it found the plaintiff was negligent and that his negligence was the sole, proximate cause of the accident, the verdict should be for defendants. Finally, appellant asserts that the giving of instruction No. 20 was erroneous. It stated the doctrine of comparative negligence of this state as applied to this case and as interpreted by the trial court. The comment of appellant concerning this instruction is that it "was the standard instruction on comparative negligence, as the doctrine exists under the laws of the State of Nebraska." This analysis of the instruction precludes the necessity of any defense of its appropriateness as a statement of the law of comparative negligence.

The objection of appellant to these instructions is that they were each inappropriate because there was no evidence to which they could have been applied by the jury. Appellant insists that there was no evidence of any negligence on his part and that the issue of contributory negligence should not have been submitted to the jury. The detailed recital of the evidence made above demonstrates that there was substantial evidence, direct and circumstantial, tending to establish contributory negligence of appellant as to each of the specifications of negligence made in the answer of appellees. The trial court was correct in submitting the issue concerning negligence to the jury.

Strnad v. Mahr; 165 Neb. 628, 86 N. W. 2d 784, states: "Contributory negligence, in its legal signification, is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or co-operating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of."

Want of ordinary care and not knowledge of the danger is the test of contributory negligence. Farag v. Weldon, 163 Neb. 544, 80 N. W. 2d 568.

In Travinsky v. Omaha & C. B. St. Ry. Co., 137 Neb.

168, 288 N. W. 512, the court said: "The negligence does not arise from the single circumstance of whether the pedestrian looks or does not look. The determining element in this type of case is the sudden movement into the path of the vehicle followed by almost instantaneous collision." See, also, Halliday v. Raymond, 147 Neb. 179, 22 N. W. 2d 614.

Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144, declares: "When one, being in a place of safety, sees and is aware of the approach of a moving vehicle in close proximity to him, suddenly moves from the place of safety into the path of such vehicle and is struck, his own conduct constitutes contributory negligence more than slight in degree, as a matter of law, and precludes recovery."

Crunk v. Glover, *supra,* states: "If there is evidence which sustains a finding for the litigant who has the burden of proof in an action at law, the trial court may not determine it and decide the case as a matter of law."

The version of the events culminating in the accident, as stated by appellant, was that he came out of the Brandeis store about 3 o'clock p. m. on the day of the accident with the intention of going east across Sixteenth Street. He went to the curb on the west side of that street and stood right against the traffic light pole. He was to the south of it. The traffic light at that time was red for east-and-west traffic. He stopped and "* * * I had a sudden push behind me." He was asked: "You don't know who or anything?" His answer was: "No." He said because of this he went out about two steps into what is spoken of as the parking lane, the one closest to the curb, and when he came to a halt he was off balance and more stooped but he did not fall down. He said he saw a bus coming from the north in the driving lane which was east of the parking lane and about one-half of the bus or the front 20 feet of it was in the intersection. Appellant started backing up toward the curb and he got back with one

foot on the curb and was struck by the bus. The next thing he remembered was that evening. He was then in the hospital. He said there was a large number of people on the sidewalk. It was very crowded and he had to work his way through the crowd from the street to the curb. There was no one produced as a witness to corroborate appellant in any particular concerning his story of the happenings before and at the time of the accident. No witness saw him pushed or saw him backing up from about two steps out in Sixteenth Street to the curb. If appellant saw the bus when the front 20 feet of it were in the intersection, the bus was then not less than 59 feet north of appellant and he was, according to his own testimony, then on his feet and only two steps from safety. He assigns no reason for attempting to back up to the curb and into a crowd which he would like to have believed propelled him from the sidewalk and about two steps out into Sixteenth Street. The purpose of this recitation is to demonstrate that there was a controversy as to the facts concerning the accident. The essentials of an issue of fact existed concerning the contributory negligence of appellant. Reasonable minds could have reached different conclusions from the evidence in the case. Issues of negligence, contributory negligence, and degrees of negligence are, when the evidence is conflicting, for determination by a jury. It is said in Owen v. Moore, 166 Neb. 239, 88 N. W. 2d 768: "In a case where different minds may reasonably draw different conclusions or inferences from the adduced evidence, or if there is a conflict in the evidence as to whether or not the evidence establishes negligence or contributory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to a jury."

Appellant tendered and requested four instructions discussing the duty of a motorist operating a vehicle in a congested area. The predominant theme of these is that it is the duty of a driver of a motor vehicle to

exercise reasonable care in its operation; and if pedestrians are numerous and traffic is congested, the degree of care required must be commensurate with the danger reasonably to be anticipated. The charge given to the jury included all the essentials of these though not in the identical language. Instruction No. 11 given by the trial court advised the jury that the following rules of law are applicable to all drivers of motor vehicles in this state and then stated the following: "A driver of a motor vehicle should at all times keep a reasonably careful lookout and have his motor vehicle under such reasonable control as will enable him to avoid collision with pedestrians, assuming that the pedestrians will exercise due care. 'Reasonable control' by drivers of motor vehicles is such control as will enable them to avoid collision with pedestrians who are without negligence in streets or intersections * * *. It is the duty of a driver of a motor vehicle to keep a constant lookout in the direction of anticipated danger. The duty to keep a lookout implies a duty to see that which is in view and to act with due care in accordance with the circumstances." The court also said in instruction No. 13: "* * * the operator of the bus had the duty to keep a constant lookout in the direction of anticipated danger, to see that which was in his view, and to have the bus under such reasonable control as to enable him to avoid collision with pedestrians assuming that they would exercise due care for their own safety; in short, it was his duty to exercise due care for his own safety and for the safety of others under all the surrounding circumstances and conditions existing. Unless and until he had warning, notice or knowledge of danger of a collision with pedestrians, and especially the plaintiff, or by the exercise of due care should have had such warning, notice or knowledge, he had the right to govern his actions accordingly so long as he continued to exercise due care under the surrounding circumstances. It is for you to determine from the evidence what the

surrounding circumstances and conditions were at the time and place of this accident and whether the operator of the bus exercised such care and caution as a reasonably careful and prudent person would have exercised under the same circumstances and conditions. If you find that he failed to exercise such due care, he was negligent."

It is not error to refuse a requested instruction if the substance of it is included in the instructions given. Perrine v. Hokser, 158 Neb. 190, 62 N. W. 2d 677; Liakas v. State, 161 Neb. 130, 72 N. W. 2d 677.

An objection is made because instructions Nos. 5 and 13 tendered and requested by appellant were refused. The first of these included the matter of the operation of a motor vehicle at a reasonable rate of speed and the second of these proposals concerned the duty of the operator of a motor vehicle to give warning of its approach. The record in this case did not justify the giving of either of these. There was no evidence by appellant of any rate of speed of the bus and no proof of any unreasonable speed by it. The comment in the opinion in the former appeal in this case, Larsen v. Omaha Transit Co., *supra,* is appropriate: "At this point it is pointed out that the third and sixth specifications do not, on the record made, present a basis for recovery. The third charges that the bus was operated at an unreasonable rate of speed but there is no evidence of speed and none from which a reasonable inference of speed could be drawn. As to the sixth, there was nothing which could have required the giving of a warning prior to the time the plaintiff emerged into the street, and thereafter he knew of the position of the bus, * * * therefore the warning could have availed plaintiff nothing."

There was a request by appellees in the presence of the jury that it be allowed to view the bus which was involved in the accident, the subject of this litigation. Appellant argues that the manner and place of the re-

quest was improper and prejudicial. There was no objection thereto made by appellant at the time of the request on the ground that it was made in the presence of the jury; likewise there is no assignment of error in the motion for new trial in this respect. The request was made by appellees and counsel for appellant immediately stated that he had no objection to the request if some person was during the inspection of the bus standing with his hand over the token box. The court rejected that suggestion and appellant then objected to the request of appellees because there were photographs and a diagram of the bus in evidence in the case and a view of the bus by the jury would only be an accumulative type of evidence; and that the bus did not reflect the condition and view at the time it was in the accident. The court permitted the jury to view the bus in a street adjacent to the courthouse. The jury was in charge of the bailiff of the court and the jurors were not permitted to talk with anyone or among themselves while the bus was being viewed. The court properly advised and admonished the jury and the bailiff before they left the courtroom to make the inspection.

The record shows that it was established before the view of bus No. 1406 that there had been no change of any kind in it since the date of the accident. It is provided by statute that the court may in its discretion permit the jury, when it is believed proper, to view property the subject of litigation or the place in which any material fact occurred. The jury must be conducted in a body in charge of an officer and the view made in the presence of a person appointed by the court for that purpose. § 25-1108, R. R. S. 1943. This statute was observed in this instance and it was approved practice to permit such an inspection by the jury under the circumstances of this case. In Denison v. Omaha & C. B. St. Ry. Co., 135 Neb. 307, 280 N. W. 905, this court said: "Section 20-1108, Comp. St. 1929, gives the court the right to permit a jury to view property in litigation, or

the place where a material fact occurred. Under this law, it was proper for the jury, properly cautioned, to go in a body, in charge of the bailiff, to view the mechanism of a street car for closing the rear door, the same being on a track adjacent to the courthouse."

The record exhibits nothing from which it could be properly concluded that appellant was prejudiced because of the view by the jury of the bus. It must affirmatively appear from the record, to warrant the reversal of a judgment, that the action with respect to which error is alleged was prejudicial to the rights of the complaining party. Brown v. Globe Laboratories, Inc., 165 Neb. 138, 84 N. W. 2d 151.

The judgment should be and it is affirmed.

AFFIRMED.

MESSMORE, J., participating on briefs.