PREFERRED PICTURES CORP., APPELLEE, v. JOHN D. THOMPSON, DOING BUSINESS AS CHURCH FILM SERVICE, APPELLANT.

104 N. W. 2d 57

Filed July 1, 1960. No. 34741.

*Frost, Meyers & Farnham* and *James E. Fellows,* for appellant.

*Beber & Richards* and *William B. Woodruff,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellant and appellee executed and delivered a contract, in part printed and the remainder thereof written, on February 19, 1953, in which appellee was called "Producer" and appellant was designated "Dealer." It was recited therein that the producer was the owner of all film copyrights to "The Pilgrimage Play," herein referred to by its name or as the picture, and the dealer desired to lease from the producer 16 mm. prints of the picture for use within the confines of continental United States for nontheatrical exhibition upon the terms and conditions recited in the contract. The contract, following the recitations stated above, provided in substance: That in consideration of the mutual promises, covenants, and conditions afterwards stated, the parties to the contract agreed that the pro-

ducer leased to and licensed the dealer, and the dealer accepted the lease and license to rent, exhibit, and exploit for nontheatrical exhibitions in continental United States, two 16 mm. prints of "The Pilgrimage Play" for a period of 3 years from May 1, 1953; that for the lease and license the dealer agreed to pay the producer the sum of $50 per print per month for each month during the 3-year term of the contract payable on the first day of each month commencing on the first day of May 1953; that this agreement contained the entire understanding of the parties; and that the dealer has read this agreement, consented to and agreed to its terms, and acknowledged receipt of a duly executed copy.

The prints of the picture were delivered by appellee to appellant and he accepted and used them in his business known as and conducted in the name of Church Film Service. Appellant paid appellee the amount the contract required for each of the months of May 1953 and each month thereafter to and including the month of January 1954, the sum of $900. The unpaid balance according to the terms of the contract was $2,700. The term provided by the contract was 3 years commencing May 1, 1953, and it terminated April 30, 1956. This litigation was commenced June 27, 1956, by appellee to recover from appellant the claimed unpaid balance of $2,700. The result of the trial of the case was a verdict for appellee for the amount claimed on which a judgment was rendered the day the verdict was returned. A motion of appellant for a judgment notwithstanding the verdict or, in the alternative, for a new trial, was denied. This appeal contests the correctness of the denial of that motion.

Appellant denied the cause of action pleaded by appellee and alleged that the contract referred to in its petition was entered into on the basis of fraudulent representations by appellee and that appellant performed the contract but that appellee had breached it. The counterclaim, designated cross-petition, of appellant

stated that on or about February 19, 1953, he entered into a contract, a copy of which was attached to the petition of appellee; that the contract was entered into on the basis of "fraudulent misrepresentations" on the part of appellee; that the contract was after its execution breached by it; and that appellant had been thereby damaged in the sum of $2,650 which he asked to recover from appellee. The new matter asserted by appellant was denied by appellee.

The negotiations with appellant with reference to a contract between him and appellee which resulted in the execution and delivery of the contract, the basis of this litigation, were conducted for appellee entirely by its representative or agent, Rev. J. Hugh Weilepp, hereafter called Weilepp. He as a representative of appellee negotiated with appellant concerning it, agreed on the terms of it, and prepared and executed the contract for appellee. The contract was executed and delivered February 19, 1953, but it bears date of May 1, 1953, the date of the commencement of its term. There was paid by appellant to appellee on February 19, 1953, on account of and as part of the consideration for it the sum of $300. Appellant testified that immediately prior to signing the contract he and Weilepp discussed the proposed terms and provisions of the contract that was then the subject of negotiation in relation to the original contract made in 1950 between appellant and appellee by which the former leased a print of "The Pilgrimage Play." Appellant was then asked what was explained to him as a reason for the changeover from one form of contract to another. The objection thereto of appellee was that the agent Weilepp who solicited and negotiated the contract in suit with appellant was deceased; that appellant had a direct legal interest in the case; and that he was incompetent to testify to any conversation or transaction between him and the agent of appellee, now deceased, under the "Dead Man's Statutes." The trial court sustained the objection and excluded the testi-

mony by appellant of any conversation of the agent had before the written contract was executed and delivered.

Appellant argues that the reason for the ruling of the trial court excluding the testimony offered by appellant in this respect was incorrect and resulted in prejudice to him. The relevant part of the statute involved is that no person who has a direct legal interest in the result of litigation, when the adverse party is the representative of a deceased person, shall be permitted to testify to any conversation or transaction had between the deceased person and the witness. § 25-1202, R. R. S. 1943. Appellant was not incompetent to testify to a conversation had by him and Weilepp, the deceased agent, because appellee was not the representative of the deceased agent. A party to an action is not an incompetent witness by whom to prove a transaction or conversation with an agent of the other party since deceased. Stated differently: "Adverse party" as used in the statute does not include agents or officers of "adverse party." German Ins. Co. v. Frederick, 57 Neb. 538, 77 N. W. 1106; Jacob North & Co. v. Angelo, on rehearing, 75 Neb. 381, 110 N. W. 570; Walker v. Hale, 92 Neb. 829, 139 N. W. 658; Luikart v. Braasch, 130 Neb. 361, 265 N. W. 13; Guardian Trust Co. v. Meyer, 19 F. 2d 186. The district court adopted an erroneous reason for excluding the evidence of appellant. The error was unimportant unless it was prejudicial. The efficacy of a correct decision by a court is not diminished or destroyed by the assignment or adoption of an erroneous reason for it. This court is not limited to the reason by virtue of which a district court made a decision. Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122; Sopcich v. Tangeman, 153 Neb. 506, 45 N. W. 2d 478; A-1 Finance Co., Inc. v. Nelson, 165 Neb. 296, 85 N. W. 2d 687.

The purpose of the testimony excluded by the court as outlined above was, according to the declaration of appellant, to prove the fraudulent representations made

to him by the agent of appellee to the effect that the agent represented to appellant that he would be the exclusive distributor of the film in a specified area, to wit, from Denver to Chicago not including Kansas City; that appellee would conduct a national advertising program; and that inquiries originating in that area received by appellee regarding the showing of the film would be forwarded to appellant. Accepting that purpose for the testimony proposed by appellant and refused admission by the trial court, the ruling of the district court was correct because the testimony in question did not tend to support any adequately pleaded defense or cause of action by appellant based on fraud or fraudulent representations made to him by appellee. The only allegation in the answer of this nature was: "that the contract referred to in plaintiff's petition was entered into on the basis of fraudulent representations by plaintiff." The only allegation in the cross-petition of this nature was: "that said contract was entered into on the basis of fraudulent misrepresentations on the part of plaintiff." These were each a conclusion and represent no issuable fact.

In Thomas v. Markmann, 43 Neb. 823, 62 N. W. 206, is the following: "The answer which assailed the judgment did so in this language: 'That said judgment was procured by fraud, misrepresentation, and contrary to law.' This was a mere conclusion. The answer contained no averments of fact under which evidence was admissible to show that the judgment had been fraudulently procured."

In Johnston v. Spencer, 51 Neb. 198, 70 N. W. 982, this court said: "It is a rule of pleading that in pleading a charge of fraud and misrepresentation the facts must be stated, and not mere conclusions."

Chapman v. Meyers, 84 Neb. 368, 121 N. W. 245, quoted from the petition the following: " 'The said defendant had not at any time any interest in said certificates or any part thereof, and that the collection of the

said funds from the plaintiff herein on or about the 18th day of May, 1905 was done by misrepresentation, fraud, duress, and deceit on the part of said Ada Meyers,'" who was the defendant. The opinion then states that this constitutes the basis of plaintiff's action. The court then said: "It is a well-settled rule that in a charge of fraud and misrepresentation the facts showing such fraud must be pleaded, and a mere allegation of fraud or misrepresentation is not sufficient. * * * Tepoel v. Saunders County Nat. Bank, 24 Neb. 815; Aultman, Taylor & Co. v. Steinan, 8 Neb. 109; Arnold v. Baker, 6 Neb. 135; Clark v. Dayton, 6 Neb. 192. We think it may be said that this question is so well settled that it is unnecessary to cite any further authority in support of it. An examination of the petition in this case discloses that the only allegation relating to fraud contained therein is the one above quoted. That this is insufficient to state a cause of action based on fraud, misrepresentation, deceit, or duress seems clear. So we are of opinion that the petition in this case failed to state facts sufficient to constitute a cause of action."

In Nelson v. Nelson, 152 Neb. 741, 42 N. W. 2d 654, this court said: "Fraud is generally a question of fact and to be effective as a cause of action or a defense must be pleaded by suitable allegations of fact from which it may be concluded. * * * The mere charge of fraud is a conclusion and presents no issue." See, also, In re Estate of Nelson, 81 Neb. 363, 115 N. W. 1087; Weckerly v. Taylor, 74 Neb. 84, 103 N. W. 1065; Kemper, Hundley & McDonald Dry Goods Co. v. Renshaw & Co., 58 Neb. 513, 78 N. W. 1071.

This court has with commendable consistency since Arnold v. Baker, 6 Neb. 134, was decided in 1877 in no less than a score of decisions adhered to the doctrine that a general allegation of fraud or misrepresentation is a conclusion, presents no issue of fact, and that the facts of claimed fraud or misrepresentation must be specifically alleged to constitute a sufficient charge

thereof in a pleading. There was no issue of fraud or misrepresentation sufficiently pleaded in this case by appellant as a defense to the cause of action alleged by appellee or as a basis of a cause of action in the cross-petition interposed by appellant. It follows that any evidence of fraud or misrepresentation concerning the making of the contract, the basis of the cause of action of appellee, was inadmissible and it was properly excluded by the trial court.

Appellant had been for 16 years the owner and operator of the Church Film Service. It was an agency for the rental of religious films to churches. He made a contract with appellee in 1950 for the lease of and license to exhibit a film of "The Pilgrimage Play." That contract continued and appellant had the film by virtue thereof for 3 years until it expired in April of 1953. The term of the contract involved in this case commenced May 1, 1953. Appellant testified that before the contract was executed, its terms and provisions were discussed and the changes therein from the original contract he had with appellee were noted. It was explained to him and he knew that the new or second contract required him to pay appellee a fixed amount per month for each print of the picture during the term of the contract and that by it he was contracting for two prints instead of one print which he had under the original contract. These matters were discussed and he knew the facts while the new contract was being negotiated. He was furnished an executed copy of the contract when it was executed and delivered. He was, under the circumstances, bound to know that the new contract provided that it contained the entire understanding and agreement of the parties. The parties to it mutually operated under, performed the terms, and enjoyed the benefits of the new contract for 9 months immediately after its execution. Appellant had the prints and paid the monthly amounts required by the contract for a period of 9 months. The reason given

by appellant for failing to continue to perform the contract was that he was not getting enough business.

The written contract of the parties is complete and it is, under the circumstances, the only competent evidence of their agreement and obligations. Whatever was said by the parties concerning the making of the contract was a part of the negotiations concerning and relating to the subject matter of it and any oral statement of or understanding by the parties concerning it should have been, and to be effective was required to be, included in the written contract.

Gerdes v. Omaha Home for Boys, 166 Neb. 574, 89 N. W. 2d 849, states: "If negotiations between parties result in an agreement in reference to the subject matter thereof and if they reduce the agreement to writing, execute, and deliver it, the writing, in the absence of fraud, mistake, or ambiguity, is the only competent evidence of the contract. * * * If a written contract contains a complete obligation without ambiguity as to the object and extent of the engagement, it is conclusively presumed that the whole agreement of the parties was included therein. * * *."

The contract has not been challenged as ambiguous, the result of mistake, or adequately as the product of fraud. The written agreement is the only competent evidence thereof.

Appellee by motion asked the trial court to suppress a notice of appellant of the taking of a deposition of J. Ernest Bass because he was a nonresident of Nebraska, not a party to the case, and no process had been served upon him as required by law relating to the taking of depositions. This was April 22, 1959. The record does not show that any such notice or proof of service of it was presented to or was before the court at that time, or that any service of any notice had been made upon J. Ernest Bass or anyone representing him. The record contained at that time no information about him except it showed that he was not a party to the

case. It does not appear from the record that there was any objection to or contest of the order the motion to suppress asked, or any reason for taking the proposed deposition or that J. Ernest Bass had or was suspected of having any information of any matter material to any issue in the case. The district court sustained the motion the day it was filed. The trial of the case did not commence until more than a month and a half thereafter. There is an absence of any information that appellant made before the trial any further effort to secure any information or testimony from J. Ernest Bass. He appeared at the trial as a witness for appellee. He was examined by appellee in detail as a witness and he was extensively cross-examined by appellant in every way and upon every subject he desired. It developed on the trial that the entire negotiations with appellant for the contract in suit were conducted on behalf of appellee by Weilepp and that J. Ernest Bass had no part in them or any knowledge concerning them except what the contract shows. Appellant vigorously and extensively argues that he was prejudiced because he was deprived of the opportunity of taking the deposition of J. Ernest Bass in Omaha before the trial. There is not in the record the slightest indication that appellant was in any way or in any degree prejudiced in that regard. The record does not show that the order of the trial court suppressing the notice to take deposition was erroneous under the circumstances but in any event there was no prejudice to appellant caused by that order. It must generally be determined before an error justifies a reversal by this court that it was prejudicial to the rights of the party against whom it was made. Larsen v. Omaha Transit Co., 168 Neb. 205, 95 N. W. 2d 554.

There is no proof of the assertion of appellant in his answer and in his counterclaim that appellee breached the contract and that the prints were returned by ap-

pellant to appellee in satisfaction of any and all claims of the latter against the former.

The judgment should be and it is affirmed.

AFFIRMED.