WILLIAM GRIMES, PLAINTIFF IN ERROR, v. J. D. CAN-
NELL, DEFENDANT IN ERROR.

23 187
36 625
23 187
43 709

1. **Replevin:** CORN IN CRIB. Where chattels of the same nature and quantity belonging to different persons are mingled in one mass—as corn in a crib—any owner may recover his aliquot part by an action in replevin.

2. ———: CHATTEL MORTGAGE: INDEFINITE DESCRIPTION. Where a chattel mortgage was given by certain owners of an elevator upon "ten thousand bushels of ear corn, contained in cribs 1 and 2, situated south of the B. & M. R. R. side track, in the town of Crab Orchard, on right of way of said railroad company," and the proof was that there were three cribs without any designation as to numbers or the particular cribs included in the mortgage, *Held,* Too indefinite to entitle the mortgagee to recover corn placed in one of the cribs by a depositor.

3. **Parties:** ASSIGNMENT OF CHOSE IN ACTION: EVIDENCE OF ASSIGNEE. Every action must be prosecuted in the name of the real party in interest, and where an assignee is called as a witness to prove the assignment, he may be cross-examined as to the character of the assignment, and as to whether the avails of the suit are to be paid to the assignor ; and it is error for the court to exclude such cross-examination. Where, however, it is evident that other witnesses may be called to prove the assignment, and there is no effort to introduce such testimony or offer to prove the fact, it will be error without prejudice.

ERROR to the district court for Johnson county. Tried below before BROADY, J.

*A. M. Appelget,* for plaintiff in error.

Deposit of corn constituted sale and not bailment. Benj. on Sales, 5. *Chase v. Washburn,* 1 Ohio State, 247. *McConnell v. Hughes,* 29 Wis., 537. *Johnston v. Brown,* 37 Iowa, 200. *Hart v. Ten Eyck,* 2 Johns. Ch., 108. *Adams v. Wildes,* 107 Mass., 123. Replevin does not lie. *Wood v. Fales,* 24 Penn. State, 246.

*Clarence K. Chamberlain* and *Pemberton & Bush,* for defendant in error, cited: *Schindler v. Westover,* 99 Ind., 395.   Wells' Replevin, Sec. 312-316.   *Young v. Miles,* 20 Wis., 615.   *Sexton v. Graham,* 53 Iowa, 188.   *Ryder v. Hathaway,* 21 Pick., 305.   *Chapman v. Shepard,* 39 Conn., 413.   *Cushing v. Breed,* 14 Allen, 380.

MAXWELL, J.

This is an action in replevin brought in the district court of Johnson county by J. D. Cannell against William Grimes to recover the possession of 3,083 bushels of corn, which it is claimed had been deposited with McClure & Griffin at Crab Orchard, in Johnson county.   Grimes was in possession of said corn, claiming as agent of Rosenbaum Bros., mortgagees, under a chattel mortgage given to them by McClure & Griffin.   It is alleged in the petition that of the above amount the plaintiff deposited 417 bushels, one J. A. Vanosdal 649 bushels and twenty pounds, A. M. Williamson 1,927 bushels, and F. A. Redfield 89 bushels, and that all the receipts for the same were owned by the plaintiff.   The answer is a general denial.

On the trial of the cause a jury was waived and the cause submitted to the court, which found for the plaintiff below and rendered judgment accordingly.   A motion for a new trial having been overruled, the cause is brought into this court by petition in error.

On the trial of the cause the plaintiff below testified in substance as follows: " That McClure & Griffin done a general elevator business, had cribs and kept corn on storage, and bought stock and grain, in 1885–86.   I deposited corn with them, I also have an assignment of receipts for corn stored by others—Vanosdal, Williamson, and Redfield.   (Receipts introduced in evidence.)   These tickets were issued by McClure & Griffin, and are correct

so far as I know. The whole of these receipts represent 3,086 bushels of corn. The corn was delivered to McClure & Griffin at Crab Orchard, and I supposed was placed in crib No. 1. The corn was delivered to them for storage, to be sold by us at any time the price suited us; if we wanted to sell to them we could, if not we were to pay storage and take out the corn. The agreement was, that after the 1st of April we were to pay half a cent per month storage; until that time we were to pay no storage and the corn was to be delivered to us at any time we paid the storage. The corn was delivered last fall, most in November and December [1885]; corn was bringing in market 17 cents per bushel; it was worth that at the time time we replevied it. I have paid the storage. McClure & Griffin were in possession of the corn, and the sheriff took it; he claimed to be agent for Rosenbaum Bros., and took it on a mortgage they held on 10,000 bushels of corn."

On cross-examination he testified: "I don't know anything about cribs one and two. There are three cribs; I don't know whether this mortgage was on our corn; I did not see this corn put in the crib; McClure & Griffin were to store the corn. It seems there was other corn in the crib besides mine; I don't know how much there was left after we got ours. The date when I became owner of the other corn is on the tickets, they are assigned on the back.

"Q. Is it not true that you have an understanding with these parties who assigned tickets to you, that you are to pay this money only in case you succeeded in this suit? (Objected to as immaterial and irrelevant. Sustained. Defendant excepts.)

"I could not say that every ear taken out was the same that was put in there. I had possession of the corn assigned by the assignment; we could not take out two-thirds of the corn in the crib without getting some we put in there. We got out something over 3,000 bushels and there was eighteen hundred left in the crib.

" Q.   Now you don't know whether this corn you re-plevied is the identical corn you put in the crib, do you? (Objected to as immaterial, irrelevant, and incompetent and as having been answered. Sustained. Defendant excepts.)

" These different lots of corn were all supposed to be put in the same crib; according to Griffin's story they were; we know a great part of them were.   I never said the whole business was put in together, I said the greater part was.   The first I knew anything about it was when Griffin told me it was.   The corn was put in in November or December."

J. T. Martin, on behalf of the defendant below, testified as follows :   " I had charge of the grain business of McClure & Griffin in 1885 and 1886, as partner.   I do not know in which crib the corn was placed.   I usually run the storage corn in the big crib, the crib in which the corn replevied was in.   There were no numbers to the cribs to my knowledge; there were about 1,500 bushels of corn that was bought in this crib.   A part of the stored corn was dumped in on the other corn.   A great deal of the time the stored corn was dumped in the elevator and shipped.

" Q.   Was not all the corn brought in by this plaintiff, and those under him, to be placed in the warehouse and shipped out?   (Objected to as immaterial, irrelevant, and contrary to the admissions.   Sustained.   Defendant excepts.)

" I was acquainted with the market price of corn yesterday at Crab Orchard; it was 19 cents for old corn.   No objection was made by them to mixing the corn."

The first and second assignments of error relied upon in the brief of the plaintiff in error, viz., whether the title to the property passed to McClure & Griffin by the deposit as proved in this case, and second, the effect of mixing the corn with that of other persons in the crib, may be considered together.

The rule seems to be well settled that where chattels of the same nature and quality belonging to different owners are mingled in one mass, any owner may claim his aliquct part by replevin. *Read v. Middleton*, 62 Iowa, 317. *Ellingbor v. Brakken*, 30 N. W. R., 659. *Inglebright v. Hammond*, 19 Ohio, 337. *Ryder v. Hathaway*, 21 Pick., 298. *Kaufmann v. Schilling*, 58 Mo., 218. *Young v. Miles*, 20 Wis., 615. *Kimberly v. Patchin*, 19 N. Y., 330.

In *Inglebright v. Hammond*, *supra*, it was held that, "Where a person taking his wheat to a mill to be ground, by the assent of the miller mingles it with the wheat of the miller, he does not thereby lose his property in the wheat, but retains a property in so many bushels of the common stock as he has put in; although, by a contract between the parties, the person delivering it is to receive a certain quantity of flour for a certain number of bushels of wheat."

The rule above stated we think is the correct one, and it is evident that neither the title, nor right of possession of the corn, passed to McClure & Griffin. In addition to this, the testimony fails to show that the crib in which the corn in controversy was deposited was included in the mortgage, the description in that instrument being, "the following goods, chattels, and property, to-wit: Ten thousand bushels of ear corn contained in cribs 1 and 2 situated south of the B. & M. R. R. side track, in the town of Crab Orchard, on right of way of said railroad company." The testimony shows that none of the cribs were numbered, or designated as 1, 2, or 3. There is no affirmative proof, therefore, that the corn in question was included in the mortgage.

2. The refusal of the court to permit the cross-examination of Cannell as to the character of the assignment of the warehouse receipts held by him.

In *Hoagland v. Van Etten*, 22 Neb., 681, it was held

that under section 29 of the code an action must be brought in the name of the real party in interest, and that the naked assignment of a claim to a plaintiff upon an agreement that he was to pay to the assignor the proceeds of such claim, would not authorize such plaintiff to maintain the action, and we adhere to that decision. It is a fundamental rule, also, that a witness may be cross-examined upon any matter in relation to which he has testified on his direct examination. The court, therefore, erred in excluding the cross-examination upon the points named. But while the cross-examination was proper and should have been permitted, there is no proof before us nor any offer to prove that Cannell was not the real party in interest. If such was the case, such proof, no doubt, was at hand by calling the assignors as witnesses, but no attempt of this kind seems to have been made. The error, therefore, so far as appears, is without prejudice. Upon the whole case it is apparent that justice has been done, and the judgment is affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.