ALF ELANDER, APPELLANT, V. KELLOGG GRAIN COMPANY, A CORPORATION, ET AL., APPELLEES.

117 N. W. 2d 522

Filed February 8, 1963. No. 35299.

Firmin Q. Feltz, for appellant.

Hastings & Wanek, for appellee Kellogg Grain Co.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is a conversion action brought by Alf Elander against Kellogg Grain Company, a corporation, and Theodore (Jim) Apolius, to recover a balance due of $3,000 and interest on an $8,000 note secured by a chattel mortgage on 6,000 bushels of wheat. A motion for a directed verdict or to dismiss was sustained at the close of plaintiff's case. Plaintiff perfected his appeal to this court.

The controlling rule when a motion for dismissal or directed verdict is sustained at the close of plaintiff's case is that every fact alleged which the evidence tends to support will, for the purposes of the motion, be considered as proved. See Canaday v. Krueger, 156 Neb. 287, 56 N. W. 2d 123.

With the above rule in mind, we determine the facts to be as set out herein. On September 4, 1957, Theodore (Jim) Apolius, hereinafter referred to as Apolius, borrowed $8,000 from the plaintiff and executed a note for that amount due March 4, 1958, secured by a chattel mortgage executed at the same time on 6,000 bushels of wheat. The portion of the chattel mortgage material to decision herein is the following: "The undersigned, of Keith County Nebraska for the purpose of securing payment of Eight Thousand & no/100 Dollars and interest according to the conditions of 9/4/57 promissory note, of even date herewith payable March 4, 1958, for $8,000.00, do hereby sell, convey and mortgage unto Alf Elander and its assigns, the following described property, now in my possession, to-wit: 6,000 Bu. Wheat - (Six Thousand) located on W-½ 6-12-37 Keith County, Nebr. & on N.E. ¼ 8-12-37 Keith County, Nebr. stored in aproved (sic) Frame Grainreys (sic) owned entirely by us and free and clear of encumbrances.

"This mortgage is intended to include the increase of any stock above described. The above described property is now kept on NE Quarter of Sec 8, Twp. 12, R 37, Keith County Nebraska."

This mortgage was filed for record in Keith County September 19, 1957. The evidence indicates that the west half of Section 6, Township 12 North, Range 37 West, described above, is a misdescription. Wheat belonging to Apolius was actually stored on the east half of Section 6, Township 12 North, Range 37 West, and Apolius had no connection with the west half of said section. At the time of the execution of the mortgage, the defendant had on hand at least 13,500 bushels of wheat. His testimony is that he had 5,000 bushels stored in a frame granary on the east half of Section 6, Township 12 North, Range 37 West in Keith County, Nebraska, and 8,500 bushels stored in a frame granary on the northeast quarter of Section 8, Township 12 North, Range 37 West in Keith County, Nebraska; that in addition thereto, he had 1,000 bushels stored in a garage on the northeast quarter of Section 8, which was used as a granary; and had 1,200 bushels stored in a steel granary on the east half of Section 6.

The Kellogg Grain Company, a corporation, hereinafter referred to as Kellogg, through the manager of its elevator at Grant, Nebraska, purchased approximately 3,500 bushels of wheat from Apolius for which it paid him $6,294.79, which was stipulated to be the fair and reasonable market value of the wheat. These purchases were as follows: October 17, 1957, approximately 2,500 bushels for $4,410.92; November 7, 1957, approximately 500 bushels for $916.12; and February 26, 1958, approximately 500 bushels for $967.75. These sales were made by Apolius without the consent or the knowledge of the plaintiff. Kellogg's manager at Grant knew that Apolius lived in Keith County but did not check the chattel mortgage records in that county or make any inquiry to determine if the property was mortgaged. The evi-

dence is undisputed that Apolius also owned and farmed a half section of land in Perkins County, the county in which Grant is located. The wheat from this Perkins County farm was stored on the northeast quarter of Section 8, Township 12 North, Range 37 West, in Keith County. Apolius made the following payments on the note: October 25, 1958, $480 interest; September 26, 1959, $4,000; and March 26, 1960, $1,000, and the interest due to March 26, 1960.

The plaintiff did not see or inspect his security at any time. He made no attempt to do so until September 23, 1959, when he visited the Apolius farms and found the granaries empty. This action was commenced October 19, 1960, alleging that the mortgage had never been paid or released; that the plaintiff was entitled to the possession of the mortgaged property; that the plaintiff's lien followed the proceeds of the wheat sold to Kellogg; and that Kellogg's failure to pay the plaintiff constituted a conversion of mortgaged property. The evidence is undisputed that at the time Kellogg purchased the wheat, Apolius still had 6,000 or more bushels of wheat remaining in his possession in the frame granaries.

The trial court held that the plaintiff's mortgage was void for insufficient description, and sustained the motion of Kellogg for a directed verdict and a dismissal. Kellogg argued that inasmuch as the wheat is stored in frame granaries on two different sections, and they contained much more than 6,000 bushels with no information as to the amount intended to be covered in each granary, the case is controlled by Grimes v. Cannell, 23 Neb. 187, 36 N. W. 479. In that case, the court held a mortgage on 10,000 bushels of ear corn in cribs 1 and 2 on a side track was too indefinite when the proof disclosed there were three cribs, without any designation as to numbers.

Plaintiff contends the case is governed by McCormick Harvesting Machine Co. v. Reynolds, 62 Neb. 892, 88

N. W. 130. In that case, the mortgage described " 'Five hundred bushels yellow corn now in pile on ground on Gilman farm, * * *.' " There was in fact more than 1,000 bushels in the pile, but there was only one pile of corn on the farm. The court held under the circumstances in that case a valid mortgage could be given on an aliquot number of bushels, and followed the rule announced in Buck v. Davenport Savings Bank, 29 Neb. 407, 45 N. W. 776, 26 Am. S. R. 392, that: "The description of property in a chattel mortgage will as a rule be held sufficient where it will enable a third party, aided by inquiries which the instrument itself suggests, to identify the property."

There were 8,500 bushels of wheat in a frame granary on the northeast quarter of Section 8 as well as 1,000 bushels stored in a garage designated as a granary. There were 5,000 bushels in a frame granary on the east half of Section 6. There was also a steel granary holding 1,200 bushels on this section. No attempt was made to prove any of the granaries were "approved frame granaries." The case was tried on the assumption the granaries with the 8,500 bushels and the 5,000 bushels were the granaries described. As we view the evidence, a decision in this case does not depend upon a determination of the sufficiency of the mortgage description. Because it is not necessary to decide the question, we will assume for the purposes of discussion the validity of the mortgage.

The only evidence offered to connect the mortgaged wheat with that sold to Kellogg is the following: " 'Question: Could you recall perhaps the first time after harvest when you commenced hauling wheat? Answer: Yes, I hauled wheat to make room for my corn. Question: And when was this wheat hauled? Answer: Well, it would have to be hauled after the middle of October. Question: 1957? Answer: Uh-huh. Question: And do you recall approximately how much wheat you hauled at that time? Answer: No, I can't recall

approximately how much I had hauled. Question: Do you recall where you hauled it?' * * * 'Answer: It came out of the granary on the Northeast Quarter of 8 of the big bin that the bulk of which came from the Perkins County farm and it was the driveway of this granary that holds approximately 4,000 bushel, and I also cleaned out my garage driveway which, I don't remember what was in there. I said a while ago, approximately. That would be what it was.' * * * 'Question: And do you recall where you hauled that to? Answer: Well, I most generally hauled—' MR. WANEK: I move to strike the rest of that answer as not responsive, Your Honor. THE COURT: Overruled. 'Question (answer): (Continuing)—whichever direction the roads were the best and who was paying the most money. And I hauled —I can't recall just exactly where I hauled it, but I sold a lot of wheat to Floyd.' " (Floyd Stewart was the name of the manager for Kellogg at Grant.)

It is evident that this evidence is not sufficient to prove that Kellogg purchased mortgaged grain stored in the frame granaries. The most it says is that a lot of wheat was sold to Kellogg. The witness talks of wheat in the driveway of a granary holding 4,000 bushels. The frame granary on the northeast quarter of Section 8 holds 8,500 bushels and was completely filled after the 1957 harvest. Further, under no construction could wheat in the garage driveway be held to be covered in the mortgage. It is elementary that, in an action for conversion, the identity of the property must be established by a preponderance of the evidence. See 89 C. J. S., Trover and Conversion, § 132, p. 621.

Continuing with the testimony: " 'Question: And again at the time that this wheat was hauled, you had remaining in your possession 6,000 or more bushels of wheat? Answer: Yes. Question: Now did you at some later date dispose of the balance of this wheat? Answer: Yes. Question: Will you describe for us the circumstances under which this occurred? Answer:

Now we are in '58? Question: I don't know when. Answer: Naturally, there is no wheat now, and it has been disposed of. I recall asking Elander if it would be all right to move the wheat to make room for a new crop. Question: Now do you recall when this conversation took place, approximately? Answer: Well, it was prior to harvest in the following year. Question: It would be prior to the harvest of 1958? Answer: Yes. —Question: And at this time do I understand that you had 6,000 or more bushels of wheat on hand? Answer: Yes, somewhere in that category. I don't remember what was there just exactly.' "

Assuming for the sake of discussion that the plaintiff has proved that all of the wheat purchased by Kellogg came from the frame granaries designated in the mortgage, which assumption is not sustained by the evidence, there is no dispute that Apolius still had 6,000 bushels of wheat on hand in the frame granaries after the sales to Kellogg. In fact, there were still more than 6,000 bushels on hand prior to the harvest in 1958 when Apolius asked plaintiff's permission to move the wheat to make room for the 1958 crop. The only purchase made by Kellogg in 1958 was approximately 500 bushels February 26. There is no indication as to how long before the harvest the conversation in question took place, but the inference would be that it was after February.

It is the plaintiff's position that until he selects the 6,000 bushels of wheat from the 11,000 or more bushels of wheat in the frame granaries on the two sections, his mortgage covers any portion sold from the more than 11,000 bushels stored therein. Plaintiff contends it was impossible for Apolius to sell any wheat from the total amount in the frame granaries without selling the plaintiff's security, until a selection was made. This position is too obviously fallacious to require extended discussion. While a right of selection may exist between the mortgagee and the mortgagor, until that right of selec-

tion has been made, unless there is sufficient data, aided by inquires suggested by the mortgage, to permit a selection to be made by a third party, the mortgage is void for uncertainty as against third parties. Plaintiff cites 14 C. J. S., Chattel Mortgages, § 61, p. 669, as authority for his position. We call attention to the following language in that citation: "* * * when the rights of third persons become involved, the great weight of authority supports the rule that a mortgage of a specified number of chattels out of a larger number, or of a specified quantity out of a larger mass, which does not furnish data for the separation of the mortgaged chattels, is, when there is no separation or delivery, void for uncertainty, * * *." It is not necessary to decide the question as to whether sufficient data is furnished in plaintiff's mortgage to permit a separation of the mortgaged wheat. As we interpret the rule enunciated in McCormick Harvesting Machine Co. v. Reynolds, *supra,* the most the plaintiff could require is that his security not be depleted below the amount covered by his mortgage, or 6,000 bushels. It was not so depleted until after the sales to Kellogg. Where a mortgage describes a specific quantity out of a larger mass, until separation is made the most that the mortgagee can require is that the mass not be depleted below the quantity specified in the mortgage.

The trial court disposed of this case on a point we do not deem it necessary to decide. However, the efficacy of a correct decision by a court is not diminished or destroyed by the assignment or the adoption of an erroneous reason for it. This court is not limited to the reason by virtue of which a district court made a decision. See Preferred Pictures Corp. v. Thompson, 170 Neb. 694, 104 N. W. 2d 57.

As we view the record, the plaintiff failed to prove that the wheat sold to Kellogg was the wheat covered by the mortgage. However, even if we were to assume that the plaintiff had proved that the wheat purchased

by Kellogg came from the frame granaries described in the mortgage, the plaintiff could not recover. More than 6,000 bushels remained in those granaries after Kellogg made its purchase.

We determine that the motion of defendant Kellogg for a directed verdict and for a dismissal of the action should have been sustained for the reasons given. We therefore affirm the judgment of the trial court.

AFFIRMED.

SIMMONS, C. J., not participating.