OTTO FARMS, INC., APPELLEE AND CROSS-APPELLANT, V. FIRST
NATIONAL BANK OF YORK, NEBRASKA, APPELLANT AND
CROSS-APPELLEE.

422 N.W.2d 331

Filed April 21, 1988.   No. 86-287.

Stephen H. Nelsen and Richard P. Garden of Cline,
Williams, Wright, Johnson & Oldfather, for appellant.

John M. Guthery of Perry, Perry, Witthoff, Guthery, Haase
& Gessford, P.C., for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and RIST and CLARK,
D. JJ.

RIST, D.J.

This is an action in conversion. Plaintiff alleged defendant
had converted to its own use corn and soybeans, the property of
plaintiff. The jury found for plaintiff, and judgment was
entered accordingly. Defendant appeals. Plaintiff cross-appeals
on the issue of prejudgment interest.

The record reflects that in 1983 one Ralph Heiden farmed
240 acres belonging to plaintiff under an oral crop lease, each
party receiving one-half of the crops grown. In the same year,
Heiden also farmed land he owned and several other leased
tracts.

Plaintiff's land was planted to corn and soybeans, and
following harvest the corn and beans were stored in separate
bins without division and were additionally commingled therein
with corn and soybeans Heiden had raised on other land.
Heiden and the owners of the plaintiff corporation testified

that this lease arrangement had been in effect for a number of years and that the corporation relied annually upon Heiden's estimate and determination of what their crop shares were. At plaintiff's direction, Heiden would deliver plaintiff's share to a local elevator without charge.

In the same year, Heiden had borrowed money from defendant bank and had secured the loan with a security agreement, duly perfected, in all crops, grain, and livestock owned by Heiden.

Heiden's estimate of plaintiff's share of crops for 1983 was 7,500 bushels of corn and 370 bushels of soybeans. Plaintiff has not questioned this determination.

In the spring of 1984 there remained in the bins 1,286.17 bushels of soybeans and 8,960.34 bushels of corn. At that time Heiden was experiencing financial difficulties, was in default on his obligation to defendant, and had determined to cease farming. Defendant, acting under its security agreement in Heiden's grain, went to the bins and, from May 15, 1984, to June 5 of that year, removed all of the amounts of grain last above described, sold it, and applied the proceeds on Heiden's debt.

From the time of harvest in the fall of 1983 until the grain was taken by defendant, Heiden had sold a portion of the corn and beans, delivering the proceeds from said sales to the defendant, which applied it on Heiden's debt. During the same period Heiden fed some of the corn in an unknown amount to his livestock. As indicated above, defendant also had a lien upon the livestock under the security agreement, and in 1984 defendant took possession of the livestock at or about the same time it took possession of the grain, sold the livestock, and applied the proceeds on the debt.

At the time of Heiden's financial difficulties in the spring of 1984, the plaintiff, when it learned he intended to stop farming, directed Heiden to deliver its share of the grain to the elevator, but defendant's taking of the same occurred before any such delivery was effected.

Plaintiff's share of the soybeans was stored in a bin located some miles from Heiden's home farm together with other beans belonging to Heiden. The record reflects no disposition of the

beans prior to defendant's seizure except for the sale by Heiden, defendant receiving the proceeds thereof. The corn was stored in bins on Heiden's home farm and in bins on his mother's land. As indicated, some portion of this corn was sold and accounted for to the defendant and an unknown amount fed to Heiden's livestock.

Heiden testified at trial that no portion of plaintiff's crop shares was delivered to it, nor was it sold and the money paid to plaintiff. Plaintiff's testimony through its owners was to the same effect. There is no evidence to the contrary. Heiden described plaintiff's interest in terms of bushels of corn and beans as previously set forth and testified he left the grain belonging to other people in the bins at the times he took grain therefrom prior to defendant's seizure of the remainder and that there was always more grain in the bins, both corn and beans, than amounted to plaintiff's share of the same.

Defendant assigns as error that the trial court erred (1) in failing to direct a verdict for defendant for the reason plaintiff had failed to prove its ownership of the grain allegedly converted; (2) in failing to grant a judgment notwithstanding the verdict for the same reason set forth in (1) above; (3) in that the verdict was not supported by evidence establishing plaintiff's ownership in the grain allegedly converted; (4) in giving the court's instruction No. 4 and failing to give defendant's requested instruction No. 1; and (5) in that the verdict is contrary to law in that the verdict for damages was based on sole ownership of the grain rather than as a tenant in common.

A jury verdict should not be reversed unless clearly erroneous and should be upheld if supported by any competent evidence. *Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co.*, 219 Neb. 303, 363 N.W.2d 155 (1985).

The first three assignments and assignment No. 5 will be considered together, as they involve the issue of ownership.

In conversion, plaintiff's burden is to prove a right of immediate possession at the time of conversion, in this case by proving its ownership of the grain taken, which burden in turn requires a reasonable identification of plaintiff's property. *Elander v. Kellogg Grain Co.*, 174 Neb. 782, 119 N.W.2d 522

(1963). *Elander* is the only Nebraska case dealing with shares of commingled fungible property in a conversion case. In the instant case, the question of such identity involves identifying plaintiff's share of grain in a commingled quantity which included not only plaintiff's grain but that of Heiden. In the circumstances of this case, the only basis of such proof would be for the plaintiff to prove that when defendant took all of the grain in the bins, all of the plaintiff's share was still a part of it and that the quantity or amount of plaintiff's share was determined with reasonable accuracy.

We find the jury could determine the amount of corn and soybeans owned by plaintiff on the basis of Heiden's testimony of such amounts, particularly since the evidence reflects that this was the manner in which Heiden and plaintiff had dealt with the matter over the years. The issue of whether that quantity remained in the bins at the time of defendant's taking is more difficult.

With respect to the soybeans, the only change which had occurred prior to defendant's taking was the sale of some of the beans by Heiden, and the application of the proceeds on his debt by defendant. We determine the jury could find from the evidence that the beans sold came from Heiden's share that was subject to the security agreement with defendant, and no portion came from plaintiff's share. *Elander, supra,* held that where there was commingled grain, a portion of which was mortgaged and the balance owned by the tenant unencumbered, any sale of such grain by the tenant down to the amount encumbered would be held to come from the unencumbered portion. This case also stands for the proposition that the grain does not have to be divided and separated into unencumbered and encumbered shares before this rule is applicable. The tacit position of the court was that absent evidence to the contrary, it would be presumed that grain sold by a tenant was that grain which he had a right to sell.

A corollary of *Elander* is that in a commingled property situation with encumbrances and ownership such as we have here, it may be presumed that, in the absence of evidence to the contrary, a debtor who sold property and applied the proceeds on a secured obligation would sell that property pledged to such

obligation and not the property of another. Heiden's testimony that he removed no grain belonging to another could be considered by a jury as bearing out such presumption and result. Since, therefore, there were more than 370 bushels of beans in the bin at the time of defendant's taking of the entire remaining quantity, the jury could find that plaintiff's share was taken and converted by the defendant.

With respect to the corn, the quantity taken by defendant was greater than the plaintiff's share thereof. The remaining questions deal with Heiden's sale of some of it and his feeding another portion to his livestock. With respect to the sale of corn, the rule would be the same as set out above for the sale of beans inasmuch as defendant received all proceeds from such corn sales.

The matter of Heiden's feeding corn in an unknown amount to his livestock is another matter. If Heiden's share of the grain had been unencumbered, we would follow the rule of *Elander* and find that the grain he fed was his own and not plaintiff's. Here, however, we have the situation that Heiden's grain was subject to defendant's security agreement and plaintiff's share remained its property. In such a situation, we do not see how the presumption from *Elander* can apply, because either way Heiden would be feeding grain that was not free of claim of another. We, therefore, examine the record to determine if there was sufficient evidence for the jury to determine from which share the grain fed was taken. We note the following:

(1) Heiden's testimony was that when he took grain from the bins, he left grain *belonging to other people*. The only such corn belonging to other people was plaintiff's corn. While it is true that Heiden's share was encumbered, it was still his grain, subject to such encumbrance and at that point not yet belonging to defendant.

(2) The grain was fed to livestock in which the defendant had the same security interest as in the grain itself, and which livestock were taken by defendant and sold, and the money applied to the same debt.

On the basis of Heiden's testimony, the jury could find the grain fed was not plaintiff's grain but that of the defendant. The feeding of such grain to livestock in which defendant had a

security interest would be consistent with such testimony and supportive of it. Accordingly, the jury could find that defendant's taking of the corn included plaintiff's 7,500 bushels, since more than that amount was taken by defendant.

We next consider defendant's assignment that the court erred in giving its instruction No. 4 and in failing to give defendant's requested instruction No. 1.

The court's instruction No. 4 set forth the elements of conversion plaintiff was required to prove. The elements set forth were:

> 1. That plaintiff owned and had a right to immediate possession to corn and soybeans stored on the Heiden farms.
>
> 2. That in 1984, defendant took and converted to its own use and benefit through its agent the corn and soybeans owned by plaintiff.
>
> 3. That plaintiff demanded the return of the corn and soybeans from the defendant.
>
> 4. That the defendant refused to return the corn and soybeans.
>
> 5. The nature, extent, and amount of damages thus sustained by plaintiff.

Defendant's requested instruction No. 1 was "The plaintiff must establish the identification of the grain converted by a preponderance of the evidence. A mere possibility or suspicion created by the evidence is insufficient to comprise the required showing of specific identity of the grain allegedly converted."

Defendant's argument is that instruction No. 4 is fatally defective in that it describes the property involved as corn and soybeans stored by Heiden at any point in time and is misleading on the issue of ownership at the time of conversion and that it does not adequately reflect the need to find the amount of grain owned by plaintiff at the time of taking.

We find instruction No. 4, considered as a whole and with the other instructions given, required the jury to find that plaintiff had to prove it owned the grain taken by the defendant, which obviously requires such proof as of the time of taking. It also required plaintiff to prove the quantity it owned at that time. That such matters had to be proved by a preponderance of the

evidence was set forth in the court's instruction No. 5. Instruction No. 5 having correctly defined the quantum of proof, defendant's requested instruction No. 1 cannot be said to add any missing requirement to the court's instructions. We find the court's instructions adequately and correctly submitted the case to the jury. Jury instructions are sufficient to support a verdict when, considered as a whole, they fairly submitted the case and did not mislead the jury. *Maloney v. Kaminski*, 220 Neb. 55, 368 N.W.2d 447 (1985).

We next consider plaintiff's cross-appeal that the instructions should have required the inclusion in plaintiff's damages of prejudgment interest and the rate thereof and that the court erred in not so instructing and in failing to award such interest.

Plaintiff relies primarily upon the cases of *State Securities Co. v. Svoboda*, 172 Neb. 526, 110 N.W.2d 109 (1961), and *Mapledge Corp. v. Coker*, 167 Neb. 420, 93 N.W.2d 369 (1958). *Mapledge*, in the body of the opinion, holds that prejudgment interest is payable in conversion. *Svoboda* does so in the court's syllabus and did allow such interest in the judgment, but that opinion proper recites that the measure of damages is the fair market value of the property taken on the date of conversion.

While there are a number of Nebraska cases predating those last cited which state in their syllabuses that prejudgment interest is collectible, we do not find therein or in *Svoboda* or *Mapledge* a discussion of the well-established rule in effect in this state that prejudgment interest is due only if the damages are liquidated. Decisions of the Nebraska court subsequent to *Svoboda* speak only in terms of damages as being the value at the time of conversion, with no mention of interest. See, *Associated Bean Growers v. Chester B. Brown Co.*, 198 Neb. 775, 255 N.W.2d 425 (1977); *PWA Farms v. North Platte State Bank*, 220 Neb. 516, 371 N.W.2d 102 (1985); *Chadron Energy Corp. v. First Nat. Bank*, 221 Neb. 590, 379 N.W.2d 742 (1986). The rule requiring liquidated damages as a prerequisite to prejudgment interest in conversion insofar as Nebraska law is concerned was discussed by the U.S. District Court for the District of Nebraska in *United States v. Lambert*, 362 F. Supp. 609 (D. Neb. 1973), in which the court determined that because there was a reasonable controversy on liability and the amount

in dispute was not certain, no prejudgment interest was allowable in that conversion action. The U.S. Court of Appeals for the Eighth Circuit, in *Fremont Nat. Bank v. Collateral Control Corp.*, 724 F.2d 1410 (8th Cir. 1983), held in a conversion action that where damages were liquidated, prejudgment interest was allowable.

The Nebraska rule on liquidated damages is that damages are liquidated when (1) there is no reasonable controversy over liability, and (2) the amount due and the date thereof can be computed without opinion or discretion. *Holt County Co-op Assn. v. Corkle's, Inc.*, 214 Neb. 762, 336 N.W.2d 312 (1983). If either of these criteria is not met, then the damages are not liquidated.

In the instant case, there was a legitimate issue over the determination of what constituted plaintiff's property and the quantity thereof. For that reason, the damages were not liquidated.

We conclude that the earlier decisions cited by plaintiff did not take into account or consider the rule on liquidated damages and that such rule is in fact applicable. Accordingly, we find that plaintiff was not entitled to prejudgment interest herein.

We, therefore, affirm the judgment of the trial court.

AFFIRMED.