# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3023

_____

Jack Kasbergen, doing business as   *
Cache Creek Dairy; Ellie Kasbergen,   *
doing business as Cache Creek Dairy,   *
           *   Appeal from the United States
    Appellants,      *   District Court for the
           *   District of Nebraska.
    v.         *   [NOT TO BE PUBLISHED]
           *
Bunge Corporation,      *
           *
    Appellee.       *

_____

Submitted: February 12, 2002

Filed: May 10, 2002

_____

Before BOWMAN, RICHARD S. ARNOLD, and WOLLMAN, Circuit Judges.

_____

PER CURIAM.

  Jack and Ellie Kasbergen, doing business as Cache Creek Dairy, appeal from the district court's[1] decision dismissing with prejudice their claim of conversion by Bunge Corp. We affirm.

_____

[1]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

# I.

Bunge Corp. (Bunge) is a supplier of feed products used by dairies. Eades Commodities Co. (ECC), a Nebraska corporation headed by Robert Eades, Jr. (Eades), which until March of 2000 was in the business of selling grain and grain products to, among others, dairies, did business with Bunge on a credit basis.

The Kasbergens operate the Cache Creek Dairy in California. In order to offset their tax liability, they arranged to join a dairy prepay program available from ECC. The Kasbergens sent ECC $1,572,806.91 on December 28, 1999, as a prepayment on their dairy expenses for the year 2000. Eades deposited this money in an account designated as "for the benefit of Cache Creek Dairy" (the Cache Creek account).

Another dairy customer of ECC, Las Uvas Valley Dairy (Las Uvas), was also a participant in the 2000 prepayment program. On behalf of Las Uvas, ECC negotiated a contract with Bunge to purchase soybean meal at a discount rate available on prepaid contracts. On January 10, 2000, Eades sent an initial prepayment of $830,880 on the Las Uvas contract. This payment was $468,000 less than the amount needed for the full prepayment. However, in anticipation of receiving the full amount, Bunge began shipments to Las Uvas at the prepay discount price.

On January 19, 2000, Eades withdrew $468,000 from the Cache Creek account and deposited it in an account he held for another of his businesses, Goldnsilver.com, Inc. (GCI). He then wrote a check in the amount of $468,000 on the GCI account made payable to Bunge, marking it "for Las Uvas Valley Dairy acct." After the withdrawal of this amount, the GCI account had a balance of more than $470,000. Bunge received the check on January 20, 2000 and credited the amount to the Las Uvas Valley Dairy prepay ledger.

As of January 18, 2000, ECC owed Bunge in excess of $350,000 for debts unrelated to this appeal and had been unable to get its letter of credit reinstated. Accordingly, following a January 20, 2000, conversation with Bunge's credit manager, Eades agreed to designate the check for $468,000 as cash collateral in place of the letter of credit. On March 10, 2000, Bunge applied the $468,000 to the total outstanding invoices at that time. A balance of $30,150.80 remained as a credit balance. Because the $468,000 was no longer part of the Las Uvas Valley account, Bunge reduced the amount of the discount that it had credited to Las Uvas.

Bunge had no knowledge of the Kasbergens until April 7, 2000, when they demanded the return of the $468,000 transferred by Eades from the Cache Creek account to the GCI account and then to Bunge.

## II.

Nebraska law governs this case. "We review the district court's determination of state law de novo." Boerner v. Brown & Williamson Tobacco Corp., 260 F.3d 837, 841 (8th Cir. 2001) (citing Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991)).

Nebraska case law defines tortious conversion as "any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights." See, e.g., Zimmerman v. FirsTier Bank, 585 N.W.2d 445, 451 (Neb. 1998). To prove conversion, the Kasbergens must be able to establish that at the time of the alleged conversion they had a right to immediate possession of the property. Id. When the property has been commingled with like property, the plaintiff has the additional burden of identifying its property with reasonable accuracy. Otto Farms, Inc. v. First Nat'l Bank of York, 422 N.W.2d 331, 334 (Neb. 1988) (citing Elander v. Kellogg Grain Co., 119 N.W.2d 522 (Neb. 1963)).

The Kasbergens argue that the transfer of $468,000 from the Cache Creek account into Eades's GCI account and the almost immediate transfer of the same amount to Bunge allows them to trace their money from the Cache Creek account to the commingled GCI account to Bunge. As the district court found, however, sufficient funds remained in the commingled GCI account after the transfer to refund the Kasbergens' money, and thus it is mere speculation on the Kasbergens' part that the source of the money paid to Bunge was the Cache Creek account. Indeed, Nebraska case law suggests that we must presume that the money transferred was money that Eades had the right to transfer and that the Kasbergens' money remained in the GCI account. Otto Farms, 422 N.W.2d at 334 (citing Elander for the proposition that in a commingled property situation, the presumption is that the debtor transfers that property which he has the right to transfer). Because the Kasbergens failed to establish that they had a right to immediate possession of the funds held by Bunge, the district court did not err in denying their claim.

In light of our holding that the district court did not err in finding that Bunge was not guilty of conversion, we need not address the district court's additional finding that Bunge was a holder in due course of the $468,000 check.

The judgment is affirmed.


A true copy.

   Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-